LEE, P.J.,
for the Court.
FACTS AND PROCEDURAL HISTORY
¶ 1. In the mid-1990s Gibson and Carol Sims noticed wet spots in the yard of their Madison home. They contacted Bear Creek Water Association and asked if the water lines around their house were being maintained. A Bear Creek employee told the Simses that the lines were working properly and that the Simses would have to take care of any problems because the problem would be between the meter and the house. After having the water line dug up and replaced twice and finding no leaks at any time, the Simses began to notice that the house and the driveway were shifting. The Simses complained to Bear Creek several times, but Bear Creek repeatedly denied any responsibility.
¶ 2. In June 1999, Bear Creek examined its water line in front of the Simses’s home. Carol Sims noticed water spewing upward, creating a “geyser effect” when Bear Creek employees uncovered a break in the water main. Bear Creek repaired the leak in front of the Simses’s home in June 1999. The Simses subsequently hired civil engineer Jimmy Miller to examine their house and to advise them on needed repairs. In his July 1999 report, Miller noted numerous problems with the Simses’s house, but since the foundation of the house was moving in a different direction than the location of the water leak, Miller stated that the movement of the foundation in the direction away from the *232 leak indicated that the problem may not have been due to the water line. In the same report Miller stated that, “[it] is apparent that some of the movement around the structure is due to the water main leak....”
¶ 3. On August 6, 2001, Miller issued the second report of his findings, including the determination that the water leak that had existed in front of the Simses’s property caused the subsoil to be too moist, which caused the foundation to move and crack. Miller stated that prior to the second examination of the foundation there was no way that he or any lay person could have known the water leak was causing the foundation problems. The Simses filed suit against Bear Creek on September 9, 2002.
¶ 4. Discovery was later propounded by both parties. Bear Creek filed answers and objections to the Simses’s written discovery, but Bear Creek did not respond to one of the Simses’s interrogatories. Bear Creek then filed a motion for summary judgment, which the trial court granted. The trial court dismissed the case with prejudice. The Simses subsequently filed this appeal, arguing the two following errors: (1) the trial court erred by granting Bear - Creek’s motion for summary judgment and dismissing the Simses’s claim with prejudice, and (2) the trial court erred in failing to compel Bear Creek to adequately answer a properly propounded interrogatory.
STANDARD OF REVIEW
¶ 5. We review a trial court’s grant of summary judgment de novo. Hardy v. Brock, 826 So.2d 71, 74(¶ 14) (Miss.2002). The moving party has the burden of demonstrating that no genuine issue of material fact exists. M.R.C.P. 56; Lewallen v. Slawson, 822 So.2d 236, 237(¶ 6) (Miss.2002). We view the evidence in the light most favorable to the non-moving party. Hancock v. Mid Am. Ins. Services Inc., 836 So.2d 762, 764 (¶ 7) (Miss.2003).
DISCUSSION OF ISSUES
I. WAS THE TRIAL COURT CORRECT IN GRANTING BEAR CREEK’S MOTION FOR SUMMARY JUDGMENT AND DISMISSING THE SIMSES’S CLAIM WITH PREJUDICE?
A. Did the trial court properly apply the correct summary judgment standard of review?
¶ 6. The first issue asserted by the Simses is whether they brought their claim against Bear Creek within the period stated in the applicable statute of limitations. “The application of a statute of limitations is a question of law.” Jackpot Miss. Riverboat, Inc. v. Smith, 874 So.2d 959, 960(¶ 4) (Miss.2004). In the case sub judice, the applicable statute of limitations is found at Mississippi Code Annotated Section 15-1-49 (Rev.2003), which states that, “[a]ll actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after.”
¶ 7. The Simses claim that the statute of limitations began running on August 6, 2001, the date of Miller’s second report. Bear Creek claims that the statute of limitations started running on July 15, 1999, the day Miller delivered his initial report. The initial report on July 15, 1999, stated that for two years a leak had been occurring in the water main that ran along the front of the Simses’s property, and that, “if the leak had persisted for some time,” it would have been a probable cause of structural damage to the home. Here, the Simses’s expert clearly implies that water *233 leaks that persist for some time can result in structural damage.
¶ 8. We do not agree with Miller’s statement that no one could have known about the damage prior to his examination of the foundation on August 6, 2001, as his July 1999 report contradicts this assertion and evidences that damage from a water line had occurred prior to that date. In the July 1999 report, Miller stated that the damage had been done due to a leak in the water main. Miller further stated that the percentage of damage attributable to the leak could not be determined. Regardless of the percentage of damage to the home caused by the water leak, damage occurred, and the Simses had a report from Miller indicating that the water leak had caused some damage. After reading Miller’s first report, the Simses should have been on notice that Bear Creek was responsible for the damage as of July 15, 1999.
¶ 9. The trial court, in its judgment of dismissal, relied on Owens-Illinois, Inc. v. Edwards, 573 So.2d 704, 709 (Miss.1990), for the rule that “[t]he cause of action accrues and the limitations period begins to run when the plaintiff can reasonably be held to have knowledge of the injury....” The trial court also stated that, “[ijdentifi-cation of probable cause is immaterial, because for statute of limitations purposes it is the time of the injury, not the identification of its probable cause or the responsible party, that is determinative.”
¶ 10. The case sub judice does not present any genuine issues of material fact, since the correct date for the beginning of the statute of limitations period was easily ascertainable. As the evidence presented clearly indicated that the Simses had notice of their injury more than three years prior to filing their claim in September 2002, the trial court correctly concluded that no genuine issue of material fact existed as to whether the statute of limitations had run.
B. Did the trial court incorrectly fail to recognize and employ the discovery rule standard for assessing the limitation period?
 ¶ 11. The Simses assert that the discovery exception for the start of the statute of limitations period should apply here because they were ignorant of the facts that would have permitted them to bring a claim against Bear Creek. The discovery exception applies to latent injuries where matters involving water flow may require expert knowledge that an injury has occurred before the statute of limitations begins to run. Punzo v. Jackson County, 861 So.2d 340, 345(21) (Miss.2003). The plaintiff in Punzo suffered flood damage to his home after the county altered a nearby bridge. Id. at 342 (¶ 5). However, Punzo was not aware of the alteration of the bridge which caused the flooding and the subsequent damage to his home. Id. When Punzo discovered that the altered condition of the bridge caused the flooding and the damage, he timely filed notice with the county. Id. at (¶ 7). In the case sub judice, the Simses hired an engineer who confirmed the existence of the problem with the water system more than three years before they filed suit against Bear Creek. Unlike the plaintiffs in the Punzo case, the Simses knew about the problem with their foundation and its cause. Furthermore, Gibson Sims testified in a deposition that prior to Miller’s' first inspection he called Tony McMillian, an employee of Bear Creek, to complain. Gibson’s statements made during this call indicate that he knew or at least thought that Bear Creek was responsible for the problem. This is contrary to the Simses’s contention that they did not know of the *234 injury until August 6, 2001, the date of Miller’s second report.
¶ 12. As to the assertions that the first report was not conclusive, and the second report was conclusive, Ayo v. Johns-Manville Sales Corp., 771 F.2d 902 (5th Cir. 1985), is helpful in our analysis. In Ayo, the defendant physician testified that he told Mrs. Ayo that her husband’s position as an asbestos worker “could have” contributed to his health problems. Id. at 905-06. Mrs. Ayo contended that the time to bring a claim should begin to run upon her and her attorney’s review of her husband’s medical records. Id. Mrs. Ayo’s review of the medical records occurred after Mr. Ayo’s death, and if the limitations period began to run on the date of this review, Mrs. Ayo’s claim would not have been time-barred. After reviewing the evidence regarding summary judgment, the district court held that Mr. Ayo’s death was sufficient to put Mrs. Ayo on notice of the injury. Id. Affirming the judgment, the appellate court held that, “the [limitations] period does not begin to run until the plaintiff has actual or constructive knowledge of the facts which would entitle him to bring suit.” Id. at 907.
¶ 13. In the case subjudice, the knowledge of the existence of the injury was knowledge of a fact which would entitle the Simses to bring suit. As discussed above, due to the information in Miller’s July 15, 1999, report the Simses knew that there was an injury, and that Bear Creek was responsible for at least part of the injury. As asserted by the trial court, even if the Simses did not know the identity of the party, “M.R.C.P. 9(h) and 15 are designed to provide a mechanism for a plaintiff ignorant of the identity of the responsible defendant to file within the statute of limitations despite such ignorance.” Therefore, the statute of limitations began to run on July 15, 1999, when the Simses became aware of the injury.
¶ 14. We find that the first report was sufficient to put the Simses on notice as to the problems, as the problems were adequately described in that report. The trial court correctly held that the discovery exception did not apply, as the Simses had actual knowledge of the facts that would have allowed them to bring a claim against Bear Creek prior to the expiration of the applicable statute of limitations.
II. DID THE TRIAL COURT CORRECTLY HOLD THAT BEAR CREEK’S RESPONSE TO THE SIMSES’S INTERROGATORY WAS PROPERLY ANSWERED?
¶ 15. The Simses contend that when Bear Creek failed to answer one of their interrogatories, it was hiding information that could possibly be helpful to their case. This interrogatory involved the details, dates, and times of all repairs made to Bear Creek water lines located on the same street as the Simses. As discussed in Issue I of this opinion, the statute of limitations had run prior to the commencement of litigation. Thus, regardless of what happened to other homes, the answer to the interrogatory would not have aided the Simses’s cause.
¶ 16. In conclusion, we find that the Simses filed their lawsuit outside of the three year statute of limitations as stated in Mississippi Code Annotated Section 15-1-49 (Revised 2003). Therefore, we affirm the judgment of the trial court.
¶ 17. THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
*235 KING, C.J., BRIDGES, P.J, IRVING, MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.