# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-IA-01409-SCT

***CITY OF TUPELO, MISSISSIPPI***

***v.***

***JOHN PATTERSON (PAT) O'CALLAGHAN AND
PATSY K. O'CALLAGHAN***

| | |
|---|---|
| DATE OF JUDGMENT: | 08/28/2015 |
| TRIAL JUDGE: | HON. CHARLES R. BRETT |
| COURT FROM WHICH APPEALED: | LEE COUNTY COUNTY COURT |
| ATTORNEYS FOR APPELLANT: | MARTHA BOST STEGALL |
| | JOHN S. HILL |
| ATTORNEY FOR APPELLEES: | GREGORY W. HARBISON |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND RENDERED - 01/19/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DICKINSON, P.J., COLEMAN AND BEAM, JJ.**

**BEAM, JUSTICE, FOR THE COURT:**

¶1.    After a nearby ditch began to erode causing significant property damage and mold-related health issues, Plaintiffs John and Patsy O'Callaghan filed an inverse condemnation action under the Takings Clause of the Mississippi Constitution, requesting that the City of Tupelo compensate the couple for both personal injuries and significant property loss.  The City of Tupelo presents this interlocutory appeal challenging the Lee County Court's order denying its motion for summary judgment on the matter.  The City of Tupelo presents four issues, all of which were promulgated by the Lee County Court in its order on summary judgment. Finding that personal injuries are not recoverable in a claim under the Takings

Clause and that the three-year limitations period under Mississippi Code Section 15-1-49 is applicable to takings claims, we reverse the lower court's ruling, rendering a decision for the defendants.

**FACTS**

¶2.    In the late 1960s, John "Pat" O'Callaghan purchased the home at 2306 Rasberry Street in Tupelo, Mississippi, where he and his first wife resided for nearly fifteen years. Built in 1961,[1] the property originally included a one story, single-family home, with an attached, open-wall carport. To accommodate storm water drainage, the developer installed a six-inch pipe, running adjacent to the home and under Rasberry Street, diverting rain water flowing from the land into a ditch across the road. When O'Callaghan purchased the property, this drainage pipe provided an adequate solution to water runoff flowing from his yard during moderate to heavy rainstorms.

¶3.    Between 1981 and 1982, O'Callaghan and his first wife filed for divorce. He then moved out of the Rasberry Street residence, while his wife continued to dwell in the home. As part of their marital settlement agreement, both O'Callaghan and his first wife remained as co-owners on the property's title. In 1993, O'Callaghan purchased his first wife's interest in the property. O'Callaghan and his second wife moved into the home shortly thereafter and have remained there since.

¶4.    In 1992, just prior to O'Callaghan's return to Rasberry Street, the City of Tupelo (Tupelo) replaced the six-inch drainage pipe with a thirty-six to forty-two-inch pipe, attached

---

[1] Data referenced from tax records maintained by Tri-State Consulting Services, Inc. http://dl.agd.cc/prc/ms/lee/077P-35-201-00.pdf (last visited January 17, 2017).

to an open ditch along the west side of the property.[2]  The ditch originally spanned roughly four feet wide by four feet deep and served to funnel the rain runoff from the neighboring subdivisions which frequently would wash out yards on Rasberry Street.  Although the ditch encroached onto their property, neither O'Callaghan nor his first wife filed a complaint with the City regarding its installation.

¶5.    In 1996, O'Callaghan and his second wife decided to improve the property by enclosing the existing carport and creating an apartment living space.  The carport–located on the west end of the property, adjacent to the drainage ditch–was an open structure attached to the main dwelling house, including a roof and a half-wall on the west side of the foundation.  It also housed the property's laundry room in the back corner.  O'Callaghan enclosed the carport, adding front and back walls, windows, and a full bathroom.  Although he never had the foundation inspected prior to the renovation, O'Callaghan used a licensed carpenter, along with other contractors, to complete the project.

¶6.    Roughly eighteen months after the apartment was finished, O'Callaghan noticed wall cracks and roof leaks developing in the new apartment each time it rained.  Knowing that houses in the area frequently shift due to poor soil quality, O'Callaghan was familiar with such issues: in fact, just prior to patching the apartment's walls and roof, the main house required comparable repairs.  Additionally, in 1994 (one year before the apartment build-out), O'Callaghan hired a local contractor to "re-level" the home in an effort to prevent similar cracking and shifting in the future.

---

[2]This range is used in depositions, briefs, and pleadings throughout the record to describe the size of the new pipe.  No specific dimensions are provided.

¶7.    O'Callaghan initially patched any issues which occurred in the apartment, but the problems quickly proved to be more than cosmetic. Eventually the home's roof caved in and O'Callaghan hired a professional carpenter to repair the damage. However, even that work was nothing more than a temporary solution. By 2008, the carport-apartment had become uninhabitable: the roof fully caved in, the walls began to separate, and hazardous amounts of black mold formed.

¶8.    In 1996, after building the apartment and making several repairs to the home, O'Callaghan noticed that the ditch Tupelo had created in 1992 was eroding–becoming wider and deeper with each heavy rain. Convinced the erosion and the home damage were related, O'Callaghan contacted city officials and requested they reconstruct the ditch to prevent future issues.[3] Between his initial contact with the city and late 2004, a variety of Tupelo officials–including several councilmen, the city engineer, and two mayors–visited the property to evaluate the damage and address O'Callaghan's grievances. During visits to the property in the early 2000s, the city refused to remedy the erosion issue, noting that, unlike other ditches around the neighborhood, the O'Callaghan ditch was on private property. Accordingly, since 1992, Tupelo has not completed any other projects on the property aside from growth removal on the drain.

¶9.    Aggrieved, O'Callaghan filed suit in 2008–more than ten years after he first recognized the ditch was causing damage to his home. Following a period of discovery, Tupelo filed a motion for summary judgment based largely on a lack of evidence to support

---

[3]Contact with the City of Tupelo was initiated sometime between 1996 and 1998. The record includes conflicting time frames.

the idea that the structural damage to the property was caused by the ditch. Because his expert witness–an engineer–changed his opinion, noting that he did not think the damage to the home was proximately caused by the drainage pipe or ditch, O'Callaghan voluntarily dismissed his case without prejudice.

¶10. Having experienced four additional years of rainfall and erosion, O'Callaghan hired another engineer in 2012 to evaluate the ditch and the continuing damage to his home. The engineer (the third to evaluate the issues since 2004) opined that the ditch is, in fact, the cause of the damage to the home, and with each heavy rain, new damage occurs. The O'Callaghans allege that, without the information from this engineer, they did not know nor could they have known of the existence of an actionable claim against Tupelo.

¶11. Relying on the engineer's report, O'Callaghan and his wife filed the instant lawsuit. Aside from new allegations that the resultant cracks, roof issues, and leaks created a scourge of black mold in the home, exacerbating existing pulmonary issues for the couple, the complaint largely avers the same claims as the 2008 suit. The O'Callaghans again seek relief for property damage under the Takings Clause of the Mississippi Constitution, but with the added claim of personal injuries resulting from the black mold.

¶12. Tupelo again sought summary judgment, noting that damages for personal injuries are not recoverable in a takings claim and that the lawsuit, in its entirety, is time-barred. The trial court denied the motion, finding no existing Mississippi caselaw ruling on the nature of damages available under the Takings Clause, and ruling that there exists a genuine issue of

material fact as to *when* the O'Callaghans knew or should have known about the potential claim or cause of action against Tupelo.

¶13. As advised by the trial court, the City of Tupelo presents four issues on interlocutory appeal:

    **I.** **What does the language "without limitation or qualification" in Article 3, Section 17 of the Mississippi Constitution mean? More specifically, does the language mean that takings claims are not subject to a limitations period?**

    **II.** **If a takings claim is subject to a limitations period, under the facts of this case, does each heavy rain constitute a separate taking? Alternatively, under the facts of this case, has the cause of action continued unabated since 1992?**

    **III.** **Under Article 3, Section 17 of the Mississippi Constitution, are damages for personal injuries recoverable?**

    **IV.** **Is the Plaintiff's lawsuit barred by the applicable limitations period?**

¶14. Because issues I and IV are closely aligned, we combine them into one issue and address them first.

**STANDARD OF REVIEW**

¶15. When evaluating a trial court's grant or denial of summary judgment, this Court applies a *de novo* standard of review. ***Crawford Logging, Inc. v. Estate of Irving***, 41 So. 3d 687, 689 (Miss. 2010). Summary judgment is properly granted when "the pleadings, depositions, answers to interrogatories and admissions on file . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. (56)(c). The moving party bears the burden of proving that no

genuine issue of material fact exists; though "[i]f there is doubt as to whether or not a fact issue exists, it should be resolved in favor of the non-moving party." *Young v. Meacham*, 999 So. 2d 368, 371 (Miss. 2008) (quoting *Aetna Cas. & Sur. Co. v. Berry*, 669 So. 2d 56, 70 (Miss. 1996)); *see also Ratliff v. Ratliff*, 500 So. 2d 981, 981 (Miss. 1986).

## LAW AND ANALYSIS

¶16.   The O'Callaghans argue that the law is clear: the Takings Clause under Article 3, Section 17 of the Mississippi Constitution is to be interpreted "without limitation or qualification," making their claim immune from any statute of limitations imposed by the Legislature.  Further, their claim is continuing in nature, as each time a heavy rain falls, new damage to their property occurs, creating an ongoing and repetitive taking.  Finally, the harm inflicted on the O'Callaghans extends to personal injuries in the form of respiratory issues created by the growth of black mold.  The O'Callaghans assert that this Court's decision in *City of Vicksburg v. Herman*, 72 Miss. 211, 16 So. 434 (1894), serves to cover all damages in an action under the Takings Clause, filed at any time, regardless of character, and including those for personal injuries.

¶17.   Tupelo disagrees, arguing that the court's denial of summary judgment was erroneous and that this Court should reverse the decision.  Tupelo claims first that no damages are available to a plaintiff in a Takings Clause action other than (1) compensation for the fair market value of the property taken and (2) compensation for damage to the remaining property.  Additionally, they assert that the limitations period provided by Section 15-1-49 of the Mississippi Code bars this lawsuit. *See* Miss. Code Ann. § 15-1-49 (Rev. 2012).

7

Alternatively, Tupelo argues that a prescriptive easement, which matured to the ten-year requirement in 2002, also bars the O'Callaghans' claims.

¶18. Having denied Tupelo's motion for summary judgment, the trial court determined that the following issues should be addressed by this Court through interlocutory appeal, to guide further proceedings in the instant action and future similar cases.

> I. **What does the language "without limitation or qualification" in Article 3, Section 17 of the Mississippi Constitution mean? More specifically, does the language mean that takings claims are not subject to a limitations period? Further, if they are subject to a limitations period, is the plaintiff's lawsuit barred?**

¶19. In an effort to address effectively the parties' arguments, this issue is approached in three parts, beginning with the interpretation of the language quoted from this Court's decision in *City of Vicksburg v. Herman* as it relates to Article 3, Section 17 of the Mississippi Constitution of 1890.[4] This section provides that:

> Private property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law; and whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be public shall be a judicial question, and, as such, determined without regard to legislative assertion that the use is public.

---

[4] The trial court presented this issue with the erroneous implication that the phrase "without limitation or qualification" is part of Article 3, Section 17. However, these were words used in this Court's interpretation of the provision in *City of Vicksburg v. Herman*, 72 Miss. 211, 16 So. 434 (1894).

Miss. Const. art 3, § 17 (1890). To refute the City's claim that Section 15-1-49[5] of the Mississippi Code governs the limitations period for takings claims under the Mississippi Constitution, the O'Callaghans cited *City of Vicksburg v. Herman*, in which this Court interpreted the scope and application of Article 3, Section 17. *Herman*, 16 So. at 434-435. In that 1894 decision, this Court interpreted the newly revised Constitutional provision, concentrating on its first line, which provides that "private property shall not be taken *or damaged* for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law." *Herman*, 16 So. at 434 (emphasis in original). This Court noted first that, while the majority of this section could be found in previous editions of our state's Constitution, the words "or damaged" were added in 1890 to inhibit the conversion of private property to public use without due compensation, sufficiently guarding the rights of the private person. *Id*. at 434, 435. The addition of these two words expanded the protections afforded to property owners under the state's Constitution by

---

[5](1) All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after.

(2) In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury.

(3) The provisions of subsection (2) of this section shall apply to all pending and subsequently filed actions.

Miss. Code Ann. § 15-1-49 (Rev. 2012).

ensuring compensation for any damage to the property resulting from "works for public use."

*Id*.

¶20.    In interpreting the incorporation of this small (but important) phrase to Article 3, Section 17, this Court explained that, prior to the 1890 revision, "merely consequential injuries, resulting from the loss or impairment of some rights incident to the use or enjoyment, [without] invasion to the property itself, were not covered by the constitutional prohibition" against the taking of private property.  *Id*. at 434.  But after the 1890 revision, a landowner became "secured in his property, and his use and enjoyment of his property. . . entit[ling him] to due compensation for, not [just] the *taking* [. . .] of his property for public use, but for all *damages to* his property that may result from works for public use." *Id*. at 435 (emphasis added). Accordingly, this Court reasoned that the two "new words" included in the 1890 version are,

> without limitation or qualification.  They embrace within their inhibition all those attempting to convert private property to public use–artificial as well as natural persons, municipal and other corporations alike–and they cover all damages of whatever character . . . . [Before these words were included, the] citizen was already protected against the taking of his property for public use without due compensation first made, but there was no protection against injuries to the rights of the owners of private property less than the appropriation of the property itself.  To have the words "or damage" in the new constitution, to cover cases already perfectly provided for in the old constitution, would have been utterly meaningless. The citizen must now be held . . . to be entitled to due compensation . . . for all *damages* to his property that may result from works for public use.

*Id*. at 435.

¶21.    In evaluating the *Herman* language as it applies to our Takings Clause, we find no authority which defines the limitations period for takings claims or the types of damages for

10

which a petitioner can recover. Accordingly, we hold today that the phrase "without limitation or qualification" applies to the *type* of damage inflicted upon the property in question, and not the *remedy* recoverable by the property owner. Further, we hold that the use of the phrase neither prohibits nor permits the application of a limitations period to a property owner's claim under the Takings Clause.

> A. *This Court's use of "without limitation or qualification" applies to the* **type** *of damage the property in question suffered, and not the* **remedy** *afforded to the property owner.*

¶22. The language and the holding in **Herman** indicate that this Court did not intend to venture into the scope of limitations periods as they apply to the Takings Clause, but sought to address firmly the reach of the protections afforded to property owners by Article 3, Section 17. Referring to the inclusion of the words "*or damages*" to the Constitution, this Court explained that, prior to the addition of the phrase to our Takings Clause, property owners were protected only from the appropriation of their property for public use. With the injection of these words, the protections afforded to property owners were expanded to encompass "all damages to his property that may result from works for public use." **Herman**, 16 So. at 435. Now secured in the use and enjoyment of his property, the owner no longer would bear the burden for property "taken or damaged," as it was clear to the Court and "plainly declared" by the Constitution that these losses should be paid for by the "whole body of the corporation," *i.e.*, the state actor. ***Id***. A thorough reading of the case and this Court's analysis clearly indicates that this Court intended property owners to have the opportunity to recover for damage of any kind, whether negligently or intentionally inflicted

on their property by state actors. Damage inflicted upon the property is not restricted: it is "without limitation or qualification," permitting due compensation for any damage incurred, no matter the type or extent.

¶23. By publishing the language in *Herman*, this Court intended nothing more than to broaden the types of harm embodied by the state's Takings Clause. "The words 'or damaged' were inserted in the section of the Constitution . . . to protect the citizen in the use and enjoyment of his property, and to guarantee, to him those damages which were not embraced within the actual taking of the property." *Parker v. State Highway Comm'n*, 173 Miss. 213, 162 So. 162, 163 (1935). This language, therefore, does not reflect the Court's decision regarding the application of a limitations period; rather, it provides that the actual damages endured are "without limitation or qualification."

      B.     *The use of the phrase "without limitation or qualification" neither prohibits nor permits the application of a limitations period to a property owner's claim under the Takings Clause.*

¶24. Through the several cases which define our Takings Clause and cite *Herman*, this Court has advanced the rule that damage incurred by private property owners through the taking of their property by state actors cannot be restricted in an effort to prevent recovery. This prohibition, however, does not include references to time limitations for filing a claim. Thus, the question of whether a statute of limitations prescribed by the Mississippi Legislature–namely through Mississippi Code Section 15-1-49–applies to the protections provided for by the state's Takings Clause is one of first impression before this Court.

12

¶25. Tupelo argues that the **Herman** language does not prohibit the application of a limitations period; rather, it asserts that a takings claim, like any other cause of action, is subject to a limitations period and may become time-barred. Relying on this Court's ruling in **Sturges v. Meridian**, 95 Miss. 35, 48 So. 620, 621 (1909), Tupelo first argues that the O'Callaghans' claim is barred through the effect of a prescriptive easement on the strip of land. In **Sturges**, this Court held that "private property may be obtained for public use by adverse possession long enough to bar the owner's claim for compensation." **Sturges**, 95 Miss. 35, 48 So. at 621. Tupelo contends that this language serves as conclusive precedent that, for more than a century, Mississippi has recognized that a takings claim may become time-barred. Because this Court has ruled that adverse possession may suppress an owner's takings claim, Tupelo argues that the language "without limitation or qualification" is not applicable to prohibit any time-bar, including that of Section 15-1-49.[6] Tupelo claims that the O'Callaghans' action under the Takings Clause is, therefore, independently suppressed by the three-year limitations period in Section 15-1-49 and the respective holdings in several Mississippi Court of Appeals and Mississippi Supreme Court cases. *See Jackson v. Carter*, 23 So. 3d 502 (Miss. Ct. App. 2009); **Sims v. Bear Creek Water Ass'n**, 923 So. 2d 230 (Miss. Ct. App. 2005); **Punzo v. Jackson County**, 861 So. 2d 340 (Miss. 2003). With little

---

[6] Tupelo follows this argument noting that, because the new pipe and ditch were installed in 1992, and no formal complaints were filed until after the ten-year limitations period for adverse possession had passed, it now has property rights to the ditch, and the O'Callaghans, therefore, may not bring their claim. This argument fails, however, because the O'Callaghans are not claiming injury under the Takings Clause for the appropriation of land where the ditch is located, but for the damage caused to their home as the ditch has eroded.

13

binding precedent to argue on the issue, Tupelo relies heavily on the Mississippi Court of Appeals decision in *Sims v. Bear Creek Water Association*, 923 So. 2d 230 (Miss. Ct. App. 2005). That case presents an analogous situation in which the plaintiff's home incurred damage as a result of a water-line break. The injury occurred over the course of several years, throughout which the Simses filed multiple complaints with the Bear Creek Water Association. Eventually, the Simses hired contractors to dig up and examine the water lines on their property to identify the cause of their issues, though the Association continued to deny liability for any soil moisture or structural shifting on the property. In June 1999, after the Association discovered a break in the water main in front of the Simses' home, the property owners hired a civil engineer to advise them on needed repairs. This 1999 report identified issues in the Simses' home but indicated a possibility that the problem was not due to the water-main failure. In 2001, however, the engineer supplied a second report, identifying the water-main leak as the proximate cause of the structural damage. Armed with this report, the Simses then filed their complaint against the Association.

¶26. The Mississippi Court of Appeals found that Mississippi Code Section 15-1-49 applied to the Simses' cause of action and directly barred their claims against the Association, noting that, although the 1999 report did not saddle the Association with liability, it indicated that at least some of the damage done to the property was due in part to a leak in the water main. The Court of Appeals held that, "[a]fter reading [the engineer's] first report, the Simses should have been on notice that the Association was responsible for the damages as of July 15, 1999." *Sims*, 923 So. 2d at 233. The engineer's first report made

14

the correct date for the statute of limitations easily ascertainable, clearly indicating notice of the injury more than three years prior to the claim's filing date. *Id*.

¶27. Tupelo contends that this holding[7] confirms the application of a statute of limitations to a claim under the Takings Clause, and furthermore, that the Court of Appeals previously has ruled that a takings claim, like any other cause of action, may become time-barred. Moreover, the City argues, whether this Court reviews the period of limitations from the position that the ten-year, adverse-possession statute governs, or that of the three-year limitations period promulgated by Section 15-1-49 controls, neither the 2008 lawsuit nor the 2013 lawsuit is within the applicable time frame. Therefore, Tupelo suggests that, because the language "without qualification or limitation" does not prevent the application of Mississippi Code Section 15-1-49 to claims asserted under Article 3, Section 17 of the Mississippi Constitution, the O'Callaghans' claims are untimely and summary judgment should be granted.

¶28. Conversely, the O'Callaghans propose that the plain meaning of the referenced language from *Herman* establishes that Article 3, Section 17, is not subject to any statute of limitations imposed by the Legislature. Quoting the language at issue, the O'Callaghans argue that if the words of Article 3, Section 17, are "without limitation or qualification," they therefore cannot be subject to any *statutes* of *limitation*. To support their argument, the O'Callaghans cite this Court's holding in *McLemore v. Mississippi Transportation Commission*, 992 So. 2d 1107 (Miss. 2008). Like the case before this Court, the plaintiff-

---

[7] Tupelo also cites *Punzo v. Jackson County*, 861 So. 2d 340 (Miss. 2003), and *Jackson v. Carter*, 23 So. 3d 502 (Miss. Ct. App. 2009), to support this argument.

landowners in *McLemore* filed a complaint against a governmental entity–the Mississippi Transportation Commission (MTC)–alleging a taking without due compensation resulting from flooding caused by its negligent road construction. The MTC was granted summary judgment based both on Mississippi Tort Claims Act (MTCA) immunity and expiration of the applicable statute of limitation. This Court, however, overturned the lower court's decision on appeal. The O'Callaghans argue that this Court's decision and its interpretation of Article 3, Section 17, in *McLemore* are analogous to their case, highlighting dicta which reasoned:

> [A]s Section 17 now exists it is quite clear that any effort on the part of the Legislature to shield the government or any arm thereof from payment of damages occasioned by it on the appropriation of land would be futile and of no effect. Before our Constitution was adopted, sections similar to the one here under consideration had been construed by the courts of other states as being self-executing. Section 17 of the Constitution is mandatory.

*McLemore v. Mississippi Transp. Comm'n*, 992 So. 2d 1107, 1111 (Miss. 2008), (citing *Parker v. State Highway Comm'n*, 173 Miss. at 222-23, 162 So. 162 (Miss.1935)).

¶29.   While this language appears to indicate that this Court ruled that no creation of the Legislature may serve to shield the government "or any arm thereof" from compensating property owners for the appropriation or damage to their land, the *McLemore* opinion speaks only to the application of the MTCA and is otherwise silent on the question of any statute of limitations. This Court ruled that "the trial court erred in granting MTC's motion for summary judgment," thus reversing and remanding the entire action to the trial court. *McLemore*, 992 So. 2d at 1111. However, the opinion as issued references only the application of the MTCA and its one-year statute of limitations: not limitations periods in

16

general. Further, this Court reversed the trial court's ruling because it found that the trial court erroneously applied the MTCA–as a whole–to a cause of action which was not rooted in tort: not that its limitations period was inapplicable independently. Moreover, this Court's use of the *Parker* language in that opinion affirms the argument that Article 3, Section 17, is self-executing and is given effect without the aid of legislation; not that no statute of limitations may apply. Stated differently: constitutional provisions like Article 3, Section 17, are self-executing and cannot be precluded by the protections of an act, like the MTCA, a creation of the Legislature. This Court has yet to rule on whether statutes like Mississippi Code Section 15-1-49 may bar a petitioner's claim against a state actor without violating the Constitution.

¶30. Upon finding that neither the MTCA and its one-year statute of limitations nor the Notice of Claim provision under Mississippi Code Section 11-46-11(3)[8] applied to the

---

[8]

(3)(a) All actions brought under this chapter shall be commenced within one (1) year next after the date of the tortious, wrongful or otherwise actionable conduct on which the liability phase of the action is based, and not after, except that filing a notice of claim within the required one-year period will toll the statute of limitations for ninety-five (95) days from the date the chief executive officer of the state entity or the chief executive officer or other statutorily designated official of a political subdivision receives the notice of claim.

(b) No action whatsoever may be maintained by the claimant until the claimant receives a notice of denial of claim or the tolling period expires, whichever comes first, after which the claimant has an additional ninety (90) days to file suit; failure to file within the time allowed is an absolute bar to any further proceedings under this chapter.

(c) All notices of denial of claim shall be served by governmental entities upon claimants by certified mail, return receipt requested, only.

McLemores' takings claim, this Court reversed and remanded the case–a ruling immaterial to the O'Callaghans' defense against the limitations period under Section 15-1-49. *McLemore*, 992 So. 2d at 1112-13. Accordingly, *McLemore* is wholly inapplicable to the O'Callaghans' argument that a statute of limitations should not apply to their takings claim. Weighing these arguments, we agree with Tupelo and find that the *Herman* language does not prohibit the application of a limitations period. *Herman*, 72 Miss. 211, 16 So. at 435.

C.      *Is the plaintiffs' lawsuit barred by the applicable limitations period?*[9]

¶31.    While the applicable caselaw and Article 3, Section 17, fail to indicate whether a statute of limitations can serve to bar a petitioner's takings claim in Mississippi, we likewise find no precedent that indicates a takings claim is immune from the reaches of our general limitations period. There simply is no indication that a "takings clause-limitations period"

---

(d)     (i) To determine the running of limitations periods under this chapter, service of any notice of claim or notice of denial of claim is effective upon delivery by the methods statutorily designated in this chapter.

(ii) The limitations period provided in this section controls and shall be exclusive in all actions subject to and brought under the provisions of this chapter, notwithstanding the nature of the claim, the label or other characterization the claimant may use to describe it, or the provisions of any other statute of limitations that would otherwise govern the type of claim or legal theory if it were not subject to or brought under the provisions of this chapter.

Miss. Code Ann. § 11-46-11(3) (Rev. 2012).

[9] This subsection serves as response to the question presented in both briefs and the trial court's order as Issue IV: "*Was the law suit barred by the applicable limitations period?*"

18

has been the subject of discussion before this Court or our Legislature: an occurrence which we celebrate, as inverse condemnation cases traditionally represent an "area of the law [ . . . ] chock full of . . . 'obtuse decisional law that is only occasionally relieved by judicial common sense, pragmatism and candor.'" H. Dixon Montague, Billy Coe Dyer, *Compensability of Nonphysical Impacts of Public Works: A Game of Chance*, 34 Urb. Law. 171 (2002)). It is complicated, confusing, and often leads to incompatible results. *Id.* Today, we seek to prevent the evolution of a "crazy-quit pattern" of law, creating one, clear and uncomplicated rule to connect our Takings Clause with the already-established catchall provision in Mississippi Code Section 15-1-49. *Id.*

¶32. In multiple states across the country, whether specifically defined or grouped with general code provisions, "[s]tatutes of limitation generally apply to inverse condemnation claims even though they involve an issue of constitutional magnitude." **Wadsworth v. Dep't of Transp**., 128 Idaho 439, 915 P.2d 1, 128 (1996) *(*referencing Idaho Const., art. 1, §14; Idaho Code § 5-224.) Many states define the limitations period applicable to their Takings Clauses specifically, but the application of a general limitations statute is not uncommon.[10] Idaho has one such limitations statute which reads similarly to Mississippi's. Under Idaho Code Section 5-224, "[a]n action for relief not hereinbefore provided for must be commenced

---

[10] *See* the Nebraska Supreme Court case **Steuben v. City of Lincoln**, 249 Neb. 270, 543 N.W.2d 161 (1996) (providing for a ten-year statute of limitations as applied to the state's Taking's Clause); *see also* **Pleasant View Util. Dist. v. Vradenburg**, 545 S.W.2d 733 (Tenn. 1977) (Tennessee Supreme Court applied one-year statute of limitations to inverse-condemnation, takings claims); **City of Dallas v. VSC, LLC**, 347 S.W.3d 231, 248 (Tex. 2011) (citing **Waddy v. City of Houston**, 834 S.W.2d 97, 102 (1992) (recognizing that an inverse condemnation action for damage to property is governed by the two-year statute of limitations)).

within four (4) years after the cause of action shall have accrued." The Supreme Court of Idaho first applied this general provision to takings claims in the 1986 case of *Intermountain West, Inc. v. Boise City*, where it held that, "[I]t is clear that appellant's claim in inverse condemnation is barred by the statute of limitations [under Section 5-224]." *Intermountain West, Inc. v. Boise City*, 111 Idaho 878, 880, 728 P.2d 767, 769 (1986). Florida also applies a general statute of limitations to its inverse-condemnation actions under Florida Statute Section 95.11. The Florida statute serves as a detailed, yet broad, catchall provision, providing that its Takings Clause claims are subject to a four-year statute of limitations. *See Sutton v. Monroe Cty*., 34 So. 3d 22 (Fla. Dist. Ct. App. 2009) (applying Fla. Stat. § 95.11 and dismissing the appellant's inverse-condemnation claim as barred by the four-year statute of limitations).

¶33. Furthermore, the United States Supreme Court has yet to support the argument that no statute of limitations can bar a constitutional due-process right under the Fifth Amendment Takings Clause. *Wadsworth*, 915 P.2d 1, 128 Idaho 439 at 442. However, the Court's position on the issue continues to evolve on a case-by-case basis. In *United States v. Dickinson*, 331 U.S. 745, 749, 67 S. Ct. 1382, 1385, 91 L. Ed. 1789 (1947) (citing the Tucker Act, 28 U.S.C.A. § 1346 (2013)), the Supreme Court addressed the question of whether the six-year statute of limitations under the Tucker Act barred a claim for flooding and erosion that resulted from a government-constructed dam. Ruling on a separate procedural issue, the Court held that the landowner's claim was not barred. However, the opinion indicated a six-year statute of limitations applied to the landowner's claim, though

20

the statutory period had not run. *Wadsworth* 915 P.2d 1, 128 Idaho 439 at 442 (citing *Dickinson*, 331 U.S. at 749).

¶34.    More recently, in a seven-member majority opinion, the Supreme Court ruled that the statute of limitations as applied to takings claims is jurisdictional[11] and cannot be waived by parties to a case.    *John R. Sand & Gravel Co. v. United States,* 552 U.S. 130, 128 S. Ct. 750, 169 L. Ed. 2d 591 (2008).    In doing so, the Court affirmed the federal circuit court's decision to dismiss the plaintiff's claims for falling outside the time limit provided for by the Tucker Act and, therefore, outside the jurisdiction of the circuit court. *Id.* at 137.   Referring to roughly five decades of caselaw, the Court determined that the doctrine of stare decisis required it to apply the six-year bar and dismiss the plaintiff's claim. *Id.* at 139. While not mandating that the Tucker Act serve to bar all takings claims not filed within six years of accrual, the Court's holding in *Sand* does affirm that the Court permits the application of statutes of limitation to jurisdictional actions under the Takings Clause. *Id.* at 135-136.

¶35.    Accordingly, because the language found in *Herman* neither provides for nor prohibits the application of a statute of limitations to the Takings Clause, and no other caselaw in our state's history provides otherwise, we hold that the state's three-year limitations period found in Mississippi Code Section 15-1-49 applies to claims under the

---

[11]"The Court has often read the time limits of these statutes as more absolute, say, as requiring a court to decide a timeliness question despite a waiver, or as forbidding a court to consider whether certain equitable considerations warrant extending a limitations period. . . . As convenient shorthand, the Court has sometimes referred to the time limits in such statutes as 'jurisdictional.' " *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133–34, 128 S. Ct. 750, 753, 169 L. Ed. 2d 591 (2008).

Article 3, Section 17, Takings Clause. Application of this time-bar will not violate or "materially impair" the constitutional rights of the O'Callaghans or future claimants, but will act as a safeguard to force parties to pursue their claims with reasonable diligence, giving defendants the ability to defend themselves properly and thus ensure the legitimacy of trial-court decisions in future actions.

¶36.    Consequently, the claims the O'Callaghans present in the instant case are barred by the application of Section 15-1-49. The O'Callaghans argue that notice of their claim did not accrue until an engineer confirmed that their injury was a result of the ditch erosion. Therefore, they could not have filed an action against Tupelo any earlier, making accrual of their action commence no earlier than their engineer's most recent report.[12] However, this Court recently has ruled that the plain language of Section 15-1-49 "supports [the] argument that the cause of action accrued upon discovery of the injury, *not discovery of the injury and its cause.*" ***Angle v. Koppers, Inc.,*** 42 So. 3d 1, 5 (Miss. 2010) (emphasis in original). Today, we embrace consistency and strengthen the Court's position to support a plain reading of Section 15-1-49 and affirm the holding in ***Angle***.

¶37.    Not unlike the case before us, the plaintiff in ***Angle*** suffered an injury and waited to file suit until the cause of that injury was identified. ***Id.*** at 3. The plaintiff identified her injury and only five years later discovered its cause and filed her claim. As a result of the delay, her claim was submitted two years outside of the three-year limitations period.

---

[12] The O'Callaghans cite convincing caselaw in ***Punzo v. Jackson County***, 861 So. 2d 340 (Miss. 2003), though that holding is inapplicable to their claims as it proceeds under Section 11-46-11, a different limitations statute with a different discovery rule.

Looking to prior caselaw which had interpreted earlier versions of Section 15-1-49, this Court determined that the "proper inquiry under the statute" was no longer the "discovery of the causative relationship" between the action and the injury, "but the discovery of the injury," itself. *Angle*, 42 So. 3d at 6. "No provision of Section 15-1-49 provides that a plaintiff must have knowledge of the cause of the injury before the cause of action accrues, initiating the running of the statute of limitations." *Id*. at 7. A cause of action concerning a latent injury, therefore, accrues when the right to sue becomes vested: the date the injury is discovered by the plaintiff. *Id*.

¶38. For the O'Callaghans, the right to sue vested, at the earliest, between 1996 and 1998 when Pat O'Callaghan sought assistance from Tupelo officials to review and remedy the damage to his home. It was at this point that he affirmatively recognized his walls were pulling apart and his home was taking on water, regardless of the cause of those injuries.[13] At the latest, the action ripened in 2008 when O'Callaghan filed his first formal claim against Tupelo, acknowledging the injury and his right to sue.

¶39. Application of Section 15-1-49 to the 2008 lawsuit renders the claims against Tupelo stale as of 2011, when the three-year statute of limitations effectively barred further action. While "discovery [of an injury or disease] is an issue of fact to be decided by a jury where there is a genuine dispute," ***Schiro v. American Tobacco Co.,*** 611 So. 2d 962 (Miss.1992),

---

[13]Moreover, because O'Callaghan requested that Tupelo officials visit his property to assess the damage, it follows that he was aware the ditch and its erosion were the cause of the loss of lateral support, subsequently creating the injury to his property. While causation is not a part of the analysis under the statute, his recognition of the proximate cause of the injury serves as further evidence that his claim need not be addressed by the jury.

23

"as with other putative fact questions, the question may be taken away from the jury if reasonable minds could not differ as to the conclusion." ***Stringer v. Trapp***, 30 So. 3d 339, 342 (Miss. 2010) (citing ***Smith v. Sanders,*** 485 So. 2d 1051, 1053 (Miss. 1986)). Although "[t]he discovery rule under 15-1-49(2) tolls the statute of limitations for (1) latent injuries or (2) nonlatent injuries where the negligence that caused the injury is not known, . . . an individual may not take shelter in the 'discovery rule' when reasonable minds could not differ that the plaintiff possessed sufficient information to bring a claim." ***Raddin v. Manchester Educ. Found., Inc.,*** 175 So. 3d 1243, 1249 (Miss. 2015) (citations omitted). Here, reasonable minds hardly can dispute that O'Callaghan was on notice of the injury as early as 2008, and because "[n]o provision of Section 15-1-49 provides that a plaintiff must have knowledge of the cause of the injury before the cause of action accrues," awareness of the injury itself is enough to activate the notice period. ***Angle***, 42 So. 3d at 7.

¶40.    Following the rule as outlined in ***Angle***, the O'Callaghans' lack of expert testimony and their apparent confusion surrounding the cause of the damage to their home is of no consequence to this Court's ruling. We affirm the rule outlined by ***Angle*** and Section 15-1-49, holding that "the cause of action accrued and the limitations period began to run 'when the plaintiff can reasonably be held to have knowledge of the injury,' " therefore barring the plaintiffs' claims as of 2011. ***Angle*** 42 So. 3d at 6 (quoting ***Owens-Illinois Inc. v. Edwards***, 573 So. 2d 704, 709 (Miss. 1990)).

> **II.    If a takings claim is subject to a limitations period, under the facts of this case, does each heavy rain constitute a separate taking? Alternatively, under the facts of this case, has the cause of action continued unabated since 1992?**

24

¶41.    Finding that claims under our Takings Clause are subject to the general statute of limitations as outlined in Section 15-1-49, and that such claims accrue when property owners take notice of the damage or appropriation, we also hold that physical takings under Article 3, Section 17, are not continuous in nature.[14] *State Dep't of Health v. The Mill*, 809 P.2d 434, 441 (Colo. 1991). The O'Callaghans argue that the Mississippi Constitution not only compensates for original injuries incurred, but also those of a subsequent or repetitive nature. They argue specifically that, with each heavy rain, the ditch adjacent to their property erodes, the land's lateral support is weakened, and new damage occurs to their home. They claim that this repeated damage is compensable as a new taking each time it rains heavily, and that the resulting multiple occurrences of damage serve as multiple takings.

¶42.    Alternatively, Tupelo argues that if a taking has occurred, only one taking occurred overall: when the ditch was created and Tupelo assumed ownership of the land through its prescriptive easement. It argues that, to constitute a new taking, the government must do something affirmative to deprive the owner of his property. Tupelo quotes the language this Court provided in *Sturges v. City of Meridian*, 95 Miss. 35, 48 So. 620, 621 (1909), and supports its argument with the tongue-in-cheek revelation that, because the City does not cause the rain to fall, that act of God cannot amount to a new taking.

_____

[14]"It is not contended that physical takings can be continuous. This position would be inconsistent with the holdings of *Monen v. State Dep't of Highways*, 33 Colo. App. 69, 71, 515 P.2d 1246, 1247 (1973) (the right to damages accrues at the time of the taking), and *Seven Lakes Reservoir Co. v. Majors*, 69 Colo. 590, 598, 196 P. 334, 336 (1921) (statute of limitations in inverse condemnation begins to run when the taking occurs))." *See State Dep't of Health v. The Mill*, 809 P.2d 434, 441 (Colo. 1991). This Colorado Supreme Court precedent is consistent with the recommendations set forth throughout this opinion.

¶43.    That premise is thwarted, however, by the concise opinion in *Sturges*, the very case

Tupelo cites to support its argument.  Similar to the case at hand, property owner Theodore

Sturges sued the City of Meridian under the state's Taking Clause after "a substantial

increase in the volume of water made to flow through [a City-created ditch], by reason of

which the ditch was increased in size, so that the value of adjacent property was thereby

additionally impaired." *Sturges*, 48 So. at 621.  This Court ruled that "because the city had

secured by subscription the right to run a certain amount of water through a ditch of given

dimensions, it does not thereby secure the right to enlarge this ditch either by actual

excavation or through the medium of a largely increased flow of water."  *Id*.  Citing a

previous holding from *Mississippi Mills v. Smith*, 69 Miss. 299, 11 So. 26 (1892), this Court

further held that "the right secured by prescription is limited by the character and extent of

that exercised during the period of prescription, and that for any increase causing material

injury an action can be brought." *Id*.  Under *Mills* and its progeny,[15] the damage levied on

the O'Callaghans' property outside of Tupelo's prescriptive rights is compensable under

Article 3, Section 17.

¶44.    However, as it applies to this case, the prescriptive easement claimed by Tupelo is not

at issue and it is not even refuted.  Because the O'Callaghans' claims are rooted in the ditch-

erosion and the related damage done to their property, which they assert amount to a taking,

Tupelo's arguments related to a prescriptive easement are without merit.

---

[15] *See Sturges v. City of Meridian,* 95 Miss. 35, 48 So. 620 (1909)*, City of West Point v. Womack,*178 Miss. 808, 174 So. 241 (1937),  *and Pompey Lake Drainage Dist. v. McKinney Lake Drainage Dist.*, 136 Miss. 168, 99 So. 387 (1924).

26

¶45.    Both parties further discuss the continuing nature of the damage to the O'Callaghans'

home as a continuing tort claim, though in light of the holdings in **Sturges** and **Mills**, the

arguments presented are irrelevant to this Court's ultimate decision.[16] That being said, in

accordance with the rules set forth in cases from this Court and across the country, we find

that each heavy rain does not constitute a new taking or a continuing tort.  The Supreme

Court of Colorado has held that "it is not contended that physical takings can be continuous."

**The Mill**, 809 P.2d at 441.  To decide otherwise would open a state's court system to a host

of lawsuits unaffected by any statute of limitations while confusing an already difficult area

of the law.  Additionally, that same court held that the right to damages accrues at the time

of the taking.  **Seven Lakes Reservoir Co. v. Majors**, 69 Colo. 590, 595, 196 P. 334, 335-336

(Colo. 1921).  Here, the taking by damage to the O'Callaghans' property upon each heavy

rain began for the purposes of their takings claim when the property owners knew or

reasonably should have known that the damage to their home had occurred.  Thus, when the

O'Callaghans first recognized the apartment's structural failure, the taking for purposes of

their claim commenced, and the limitations period under Section 15-1-49 began to run.  This

permits the O'Callaghans to "recover in an action all damages which have been sustained,

and all prospective damages to the end of time."  **Seven Lakes**, 69 Colo. at 595.  However,

---

[16] Claims made under the Takings Clause of the Mississippi Constitution are not tort claims and therefore cannot amount to a continuing tort.  Thus, because the O'Callaghans do not present a tort claim, the continuing tort theory is inapplicable.  Further, as Tupelo states in its brief, a continuing tort is created by the continuance of tortious acts–not the continuing acts of one, singular violation. **Estate of Fredrick ex rel. Sykes v. Quorum Health Res., Inc.**, 45 So. 3d 641, 643 (Miss. 2010).  Moreover, the O'Callaghans assert that their claim is not for a continuing tort, but for multiple damages incurred through multiple takings.  The continuing-tort theory is simply immaterial.

after the lapse of three years from the "first visible and sensible appearance of the injury," their action is barred. *Id.*

*Claim Analysis*

¶46. Because the Takings Clause is unique in that it exclusively covers property damage, recovery in a takings action is limited to the appropriation or damage incurred at the time of notice, until the taking or damage ceases, or until just compensation is paid. This rule will not serve to violate a property owner's due-process rights to compensation; rather, citizens will now be secure in their property without fear that their timely claims will go unheard, while protecting defendants against false and/or stale claims. Future actions presented under Article 3, Section 17: (1) shall be subject to Section 15-1-49; (2) shall be effective from the time the property owner knew or reasonably should have known of the taking or damage, (3) shall continue uninterrupted until the taking ceases or just compensation is paid; and (4) shall concern only injuries related to the real property affected.

¶47. If the property owner incurs separate, unrelated property damage or appropriation by the same state actor, the trial court may determine whether the claims may be joined or if another lawsuit should be filed. Moreover, if the property owner alleges additional damage to his property, that damage will be included under the original complaint so long as the harm suffered was "the predictable result of the government's action," and the description of the damage incurred is pleaded sufficiently to include the extended damage. *Ridge Line, Inc. v. United States*, 346 F.3d 1346, 1355 (Fed. Cir. 2003). This analysis coincides with the

requirement that Section 15-1-49 apply to takings claims, streamlining the process in future cases under the article.

¶48.   The second question of whether the O'Callaghans' cause of action has continued unabated since 1992 is not relevant to the resolution of this appeal and would serve only to complicate our ruling.  As it stands, the only dates imperative to the resolution of these issues are those related to notice and filing of the case, not the date of actual harm.  Thus, we do not address the second prong of this issue.

**III.    Under Article 3, Section 17 of the Mississippi Constitution, are damages for personal injuries recoverable?**

¶49.   While it is "for the jury to say what extent the damages proven are attributable to" damage incurred by property owners under the Takings Clause, we find no evidence to suggest that the intent of the language in Article 3, Section 17, expands to provide remedy for personal injuries falling outside the scope of physical damage to an owner's property. ***Sturges****,* 95 Miss. 35, 48 So. 620, 621 (1909).  This constitutional provision protecting owners from damage or appropriation of their property, except upon due compensation, "was intended to protect all *interests in property* and to prevent the state from taking the same without due compensation to the owners." ***Hemphill v. Miss. State Highway Comm'n****,* 245 Miss. 33, 145 So. 2d 455 (Miss. 1962) (emphasis added).  It has long been held that, under the constitutional provision that private property shall not be taken for public use except on due compensation being first made to the owner, "what is due compensation is a judicial and not a legislative question." ***Miss. State Highway Comm'n v. Hillman***, 189 Miss. 850, 198 So. 565 (1940) (citing ***Isom v. Mississippi Cent. R. Co.***, 36 Miss. 300, 315 (Miss. Err. &

29

App. 1858)). Accordingly, this Court has held that, "[d]ue compensation for private property which is taken for or damaged by public use has two components: value of property taken, and damage, if any, to remainder. *Trustees of Wade Baptist Church v. Miss. State Highway Comm'n*, 469 So. 2d 1241, 1244 (Miss. 1985) (citing *Miss. State Highway Comm'n v. McArn,* 246 So. 2d 512, 514 (Miss.1971)).

¶50.    Nowhere in the history of this Court has the language of Article 3, Section 17, been expanded to include damages for personal injuries following a taking of real property. This Court has ruled previously that the Takings Clause, when pleaded as a chose in action to recover for personal injuries, is not applicable, despite claims that personal injuries were sustained due to the defendant's actions. In *Wells by Wells v. Panola County Board of Education*, Petitioner Wells was a student injured when hit by a school bus. He filed suit, claiming, among other issues, that the state's recovery cap found in its Accident Contingent Fund Statute violated Article 3, Section 17, amounting to a taking of his private property without due compensation. This Court held that the Takings Clause does not apply to a right to sue for a common-law action, and that such an action may be quashed entirely either by the court or through Legislative action. *Wells by Wells v. Panola Cty. Bd. of Educ.,* 645 So. 2d 8831 (Miss. 1994)). While this Court previously has held that a creation of the Legislature cannot serve to bar Constitutional claims (*see McLemore*, 992 So. 2d. at 1111), it has not said the same for those based in the common law. In *Wells*, the distinction between constitutional claims and tort claims was clearly defined:

> The legislature may abrogate common law causes of action, and alter or substitute remedies through statutory schemes. Moreover, it may be noted that

30

the legislature may bar recovery entirely, even where a remedy exists, through statutes of repose and statutes of limitations. None of these actions [has] been held to be a "taking" as that term has been interpreted by this Court.

*Wells by Wells*, 645 So. 2d at 895. Moreover, because "'takings' jurisprudence has concerned the rights of property owners—typically real property owners—to be compensated where the State's action somehow diminishes the value of their property," this Court has never construed the Clause "to apply to a [common law] cause of action, or a right to sue . . . ." *Id.* at 895.

¶51. The *Wells* decision was further affirmed by the U.S. District Court for the Southern District of Mississippi in *Clemons v. U.S.*, 2013 WL 3943494 (S.D. Miss. June 13, 2013). Here, the plaintiff argued that Mississippi's limitation on noneconomic damages for medical malpractice violated the Takings Clause of the Fifth Amendment in that it deprived her of property without procedural due process. The court held that, "while creative," her claims failed as unpersuasive because, ultimately, "her claim does not concern real property." *Clemons*, 2013 WL 3943494, at *15 (citing *Wells* 645 So. 2d at 895). Applying the *Wells* test, it is clear that, under Article 3, Section 17, damages are rendered for the appropriation of or damage to real property. Any other injuries, personal or otherwise, must be pleaded separately.

¶52. We therefore find that personal-injury claims are rooted in the common law and may not be recovered for under Article 3, Section 17. Accordingly, we hold that those personal injury claims presented by the O'Callaghans are dismissed.

**CONCLUSION**

31

¶53.    We find that the Lee County Court erred in denying the City of Tupelo's motion for summary judgment and accordingly reverse the order, rendering judgment for the City.  In doing so, we hold that the limitations period under Mississippi Code Section 15-1-49 applies to claims made under the Takings Clause of Article 3, Section 17, and that personal injuries are not recoverable under the same.  Additionally, we hold that a continuous and/or separate taking does not occur with each heavy rain, but that the taking continues from the date the claimant discovers the injury until remedy or just compensation is received.  We therefore reverse the Lee County Court's denial of summary judgment and render judgment in favor of the City of Tupelo, dismissing the plaintiffs' complaint and this action.

¶54.    **REVERSED AND RENDERED.**

   **WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., COLEMAN, MAXWELL AND CHAMBERLIN, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, J.**

   **KITCHENS, JUSTICE, DISSENTING:**

¶55.    Because a genuine issue of material fact exists regarding the point at which John and Patsy O'Callaghan knew or should have known that the City of Tupelo's drainage ditch had damaged their property, I would affirm the County Court of Lee County's denial of summary judgment. Accordingly, I respectfully dissent.

¶56.    A "cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury." Miss. Code Ann. § 15-1-49(2) (Rev. 2012). In *Angle v. Koppers*, this Court interpreted Section 15-1-49(2) to mean that a cause of action accrues for statute of limitations purposes at the time the plaintiff discovers the injury alone,

32

"*not . . . the injury and its cause*." ***Angle v. Koppers***, 42 So. 3d 1, 5 (Miss. 2010) (emphasis in original). I dissented: "'[t]he operative time for the running of the statute of limitations is when the plaintiff can reasonably be held to have knowledge of the injury itself, the cause of the injury, and the causative relationship between the injury and the conduct of the defendant.'" ***Angle***, 42 So. 3d at 9 (Kitchens, J., dissenting) (quoting ***Boyles v. Schlumberger Tech. Corp.***, 832 So. 2d 503, 506 (Miss. 2002) (quoting ***Smith v. Sanders***, 485 So. 2d 1051, 1052 (Miss. 1986))). I wrote that Angle's "cause of action would not have accrued until she knew the *cause* of her injuries, including the identity of who had caused them," and therefore summary judgment had been inappropriate. ***Angle***, 42 So. 3d at 9-10 (Kitchens, J., dissenting).

¶57.    This case demonstrates the unworkability and the inherent unfairness of the standard articulated in ***Angle v. Koppers***. The majority states that "Here reasonable minds hardly can dispute that O'Callaghan was on notice of the injury as early as 2008 . . . ." Maj. Op. ¶ 39. But the O'Callaghans initially filed suit against the City of Tupelo in 2008[17] and voluntarily dismissed that lawsuit because their expert witness, an engineer, informed them that the damage had not been caused by Tupelo's drainage ditch. Despite the advice of the engineer, under the ***Angle*** standard, the O'Callaghans were on notice of the existence of property damage and the statute of limitations clock was ticking, notwithstanding the O'Callaghans' complete lack of knowledge of whom, if anyone, they might sue.

---

[17] The decision of this Court in ***Angle***, upon which the majority relies, handed down on May 27, 2010, and rehearing was denied on August 19, 2010.

33

¶58. Absent expert testimony substantiating their claims that the *cause* of the damage to their home had been the drainage ditch, the O'Callaghans could not have articulated a cognizable takings claim: "'a cause of action accrues, and the statute of limitations begins to run when *all* the elements of a . . . cause of action . . . are present.'" ***Angle***, 42 So. 3d at 9 (Kitchens, J., dissenting) (emphasis in original) (quoting ***Weathers v. Metro. Life Ins. Co.***, 14 So. 3d 688, 692 (Miss. 2009) (quoting ***Caves v. Yarbrough***, 991 So. 2d 142, 147 (Miss. 2008))).

¶59. The Mississippi Constitution of 1890 provides that "[p]rivate property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof . . . ." Miss. Const. art. 3, § 17. This Court held in 1894, four years after the adoption of the then-new Constitution, that the addition of "or damaged" to Article 3, Section 17, of the Constitution meant that "[t]he citizen must now be held, under this new provision of our fundamental law, to be entitled to due compensation for, not the taking only of his property, but for all damages to his property that may result from works for public use." ***City of Vicksburg v. Herman***, 72 Miss. 211, 215, 16 So. 434, 435 (1894). So for the O'Callaghans to have pled a cognizable claim, they would have had to allege not only that their property had been damaged (the injury), but also that the City of Tupelo had damaged it (the cause). Moreover, if they had made such allegations against Tupelo in the absence of proof, they would have subjected themselves to sanctions under Mississippi Rule of Civil Procedure 11 and/or the Litigation Accountability Act, Mississippi Code Section 11-55-1 to 11-55-15 (Rev. 2012). ***Angle*** did not contemplate the scenario presented here.

¶60.    Fact questions remain with regard to whether the discovery rule operated to toll the statute of limitations, and we consistently have held that such fact questions should be resolved by the finder of fact: "the question of whether the suit is barred by the statute of limitations is a question of fact for the jury; however, as with other putative fact questions, the question may be taken away from the jury if reasonable minds could not differ as to the conclusion." *Smith*, 485 So. 2d at 1053. *See also **Ridgway Lane & Assocs., Inc. v. Watson***, 189 So. 3d 626 (Miss. 2016); ***Lyas v. Forrest Gen. Hosp.***, 177 So. 3d 412 (Miss. 2015); ***Holaday v. Moore***, 169 So. 3d 847 (Miss. 2015); ***Crawford v. Custom Sign Co.***, 138 So. 3d 894 (Miss. 2014); ***Honeycutt v. Coleman***, 120 So. 3d 358 (Miss. 2013).

¶61.    In the present case, because  reasonable minds could differ regarding the point at which the O'Callaghans knew or should have known that the City of Tupelo's drainage ditch caused their property damage, denial of summary judgment was proper.

**KING, J., JOINS THIS OPINION.**

35