# IN THE SUPREME COURT OF MISSISSIPPI

# NO. 2014-IA-00721-SCT

*RIDGWAY LANE & ASSOCIATES, INC. AND THE TIMBERS HOMEOWNERS ASSOCIATION*

*v.*

*LAURIE WATSON, INDIVIDUALLY, AND AS REPRESENTATIVE OF THE MARCUS J. AND PATRICIA BYRD FAMILY TRUST AND DORIS P. BYRD*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/08/2014 |
| TRIAL JUDGE: | HON. JOHN HUEY EMFINGER |
| TRIAL COURT ATTORNEYS: | JEFFREY MONROE WILLIAMS |
| | JEFFREY P. HUBBARD |
| | COWLES EDGAR SYMMES |
| | JOHN F. HAWKINS |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | JEFFREY MONROE WILLIAMS |
| | JEFFREY P. HUBBARD |
| | COWLES EDGAR SYMMES |
| ATTORNEYS FOR APPELLEE: | JOHN F. HAWKINS |
| | EDWARD GIBSON |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED AND REMANDED - 03/03/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1.    Marcus[1] and Patricia Byrd's home,[2] located in The Timbers of Crossgates subdivision in Brandon, Mississippi, was managed by Ridgway, Lane & Associates (Ridgway). The Byrds claimed that mold began growing inside the home when Ridgway and the Timbers Homeowners' Association (HOA) failed to repair a leak in the dining room ceiling, that the influx of water damaged the home and property inside, and that Marcus Byrd developed breathing problems as a result of mold exposure. Both Ridgway and the HOA filed motions for summary judgment asserting that the statute of limitations had expired. The trial court granted the defendants' motions with regard to the property damage claims but denied their motions respecting the personal injury claims. This Court granted Ridgway and the HOA leave to file this interlocutory appeal. Because no assignment of error regarding the Byrds' property damage claims was raised on appeal, we affirm the Madison County Circuit Court's grant of summary judgment respecting those claims. Finding that a genuine issue of material fact exists regarding the time at which Marcus Byrd knew or by reasonable diligence should have known of his illness, we affirm the Madison County Circuit Court's denial of summary judgment and remand the case for trial.

## FACTS AND PROCEDURAL HISTORY

¶2.    When the Byrds purchased their home, the prior owner informed them that work previously had been performed on the second-floor balcony to correct a leak which affected the first-floor dining room beneath. In 2004, Mr. Byrd began sending notices to Ridgway that

---

[1] Marcus Byrd passed away in February 2015 and his daughter Laurie Watson has been substituted in his stead.

[2] The home actually was owned by the Marcus J. and Patricia Byrd Family Trust.

water was leaking at his home, causing the floors to buckle and rot. From 2004 through 2010, Mr. Byrd sent a series of notices to Ridgway claiming that leaks had damaged the ceiling, walls, and floors and had fostered the growth of mold and mildew.

¶3.    In response to each complaint, Ridgway sent a repairman to the Byrds' home to ameliorate the condition. However, leaks continued to damage the Byrds' dining-room walls and floors. The Byrds claimed that the moisture had "led to an invasion of mold," which damaged Mr. Byrd's health.

¶4.    Prior to moving into the home in 2003, Mr. Byrd underwent a liver transplant, requiring him to take immunosuppressive medication. His medical records reveal that he "had sneezing attacks and cough for years, after 2006." Mr. Byrd sought and received treatment from Dr. Scott Layne, an internist at St. Dominic Hospital. On January 21, 2008, Dr. Layne ordered radiological testing of Mr. Byrd's chest. Dr. Bryan Lantrip read the x-rays, which revealed that Mr. Byrd had "scarring or atelectasis" and "possible accompanying traction bronchiectasis." In July 2009, Mr. Byrd's ongoing health complaints and chronic cough prompted Dr. William Hines to order a pulmonary evaluation. "His history dates back about a year when he began with what was called walking pneumonia," followed by persistent cough and a staph infection. Mr. Byrd subsequently developed mycobacterium abscessus. Between 2008 and 2009, Mr. Byrd lost about sixty pounds and his sleeping patterns were affected to the point that he could sleep for only three hours per night, approximately, due to his "constant cough."

¶5. To support their assertion that the bronchiectasis was caused by mold exposure, the Byrds designated Dr. Steven Stogner as a treating physician and expert witness. Dr. Stogner explained that Mr. Byrd had been diagnosed only with "the beginning" of bronchiectasis as of January 21, 2008, when he sought treatment for coughing from Dr. Layne. Mr. Byrd subsequently went to the University of Texas Health Center at Tyler (UTHC) in June 2010. Records from UTHC reveal that the impression was "that the patient's major symptomatic problems are related to his bronchiectasis."

¶6. The Byrds filed suit on April 21, 2011. After conducting discovery and taking depositions, Ridgway and the HOA both filed motions for summary judgment, arguing, *inter alia*, the running of the statute of limitations. The Circuit Court of Madison County held a hearing on the motions for summary judgment as well as on Ridgway's motion to exclude Dr. Stogner's testimony. The court denied the motion to exclude Dr. Stogner's testimony. The court subsequently granted summary judgment on the plaintiffs' property damage claims but denied summary judgment with respect to the personal injury claims. Ridgway and the HOA sought an interlocutory appeal in this Court, which we granted.

¶7. Ridgway and the HOA assert various claims of error, all relating to a single issue: whether the Circuit Court of Madison County erred by denying summary judgment on the Byrds' personal injury claims.

**STANDARD OF REVIEW**

¶8. Issues of law, such as those concerning statutes of limitations, are to be reviewed *de novo*. **Andrus v. Ellis**, 887 So. 2d 175, 179 (Miss. 2004). When reviewing a trial court's grant

4

or denial of a motion for summary judgment, this Court likewise applies a *de novo* standard of review. ***Whitaker v. Limeco Corp.***, 32 So. 3d 429, 433-34 (Miss. 2010).

> The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If, in this view, there is no genuine issue of material fact and, the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise, the motion should be denied.

***Leslie v. City of Biloxi***, 758 So. 2d 430, 431-32 (Miss. 2000) (citations omitted).

## ANALYSIS

¶9.     Mississippi law tolls the general three-year statute of limitations for actions involving "latent injury or disease" until such time as "the plaintiff has discovered, or by reasonable diligence should have discovered, the injury." Miss. Code Ann. § 15-1-49(1)-(2) (Rev. 2012). This Court has held that causes of action accrue "upon discovery of the injury, *not discovery of the injury and its cause.*" ***Angle v. Koppers, Inc.***, 42 So. 3d 1, 5 (Miss. 2010) (emphasis in original). We are to consider the date the plaintiff "was last diagnosed with an injury or disease." ***Id.*** at 7. "Discovery of an injury 'is an issue of fact to be decided by a jury when there is a genuine dispute.'" ***Phillips 66 Co. v. Lofton***, 94 So. 3d 1051, 1059 (Miss. 2012) (quoting ***Weathers v. Metro. Life Ins. Co.***, 14 So. 3d 688, 692 (Miss. 2009)).

¶10.     ***Lofton*** involved a plaintiff who had worked on oil and gas rigs from 1964 until 1983 using a drilling mud additive, Flosal, which contained eighty-five to ninety-five percent asbestos and which "was used to increase the viscosity of (to thicken) drilling mud fluids." ***Lofton***, 94 So. 3d at 1056. Lofton experienced shortness of breath as early as 1995 and a chest x-ray from that year "revealed pulmonary fibrosis, or scarring of the lungs." ***Id.*** at 1057.

5

A 1996 computerized tomography (CT) scan of Lofton's lungs also revealed pulmonary fibrosis. Lofton "sought treatment for his pulmonary symptoms in 2003 with Dr. Stogner,[3] a pulmonologist, who diagnosed Lofton with pulmonary fibrosis." *Id.* In 2004, Dr. Stogner determined that Lofton likely was suffering from asbestosis and, "[a]fter ruling out other etiologies, . . . diagnosed Lofton with asbestosis in 2010." *Id.*

¶11.    Lofton filed his original complaint in 2004 against CPChem, Flosal's manufacturer, in the Circuit Court of the Second Judicial District of Jones County. *Id.* Following a two-week trial, the jury returned a verdict in favor of Lofton and awarded him a $15.2 million verdict. *Id.* On appeal, CPChem argued that the statute of limitations had run on Lofton's claims, since he had discovered the injury in 1995 or, at the latest, 1996, when his doctors found pulmonary fibrosis in his lungs. *Id.* at 1059. Lofton, however, claimed on appeal "that he could not reasonably have known of his lung injury until he sought treatment from Dr. Stogner and was diagnosed with pulmonary fibrosis, or scarring of the lungs, in September 2003" and that his lawsuit, having been filed on May 19, 2004, was within the requisite statutory period. *Id.*

¶12.    This Court rejected CPChem's argument that Lofton had been in possession of the requisite knowledge in 1995-1996, when the chest x-ray and CT scan revealed that Lofton was suffering from pulmonary fibrosis: "while Lofton began experiencing shortness of breath and exhibited scarring of the lungs as early as 1995, he did not seek medical treatment for his pulmonary concerns until he began seeing Dr. Stogner, a pulmonologist, in 2003 and was

---

[3] The Court is not informed whether this is the same pulmonologist, Dr. Stogner, who was designated as an expert by the Byrds in the present case.

diagnosed with pulmonary fibrosis." *Id.* This Court affirmed the jury's verdict in Lofton's favor because he had not been diagnosed definitively with pulmonary fibrosis until 2003 and was within the statutory period for filing suit in May 2004. *Id.*

¶13.    In the present case, the trial court, in its order denying summary judgment in part on the personal injury claims, held that "[t]he plaintiff, Mr. Byrd, may have had tests that showed he had the beginning of the disease, bronchiectasis, in January 2008; however, there is no evidence which the Court can find in the record that he was diagnosed with the disease at that time." Ridgway claims on appeal that "Marcus Byrd had experienced sneezing attacks and cough for years starting in 2006," that "on January 21, 2008, Marcus Byrd sought and received treatment at St. Dominic [Hospital], complaining of cough, and the corresponding chest X-rays revealed to him that he had scarring or atelectasis of his lungs and bronchiectasis." According to Ridgway, the results of Mr. Byrd's January 2008 x-ray demonstrated "a complete absence of any latent injury," because Mr. Byrd knew then of his injury. The Byrds respond that their expert pulmonologist, Dr. Stogner, had testified at the summary judgment hearing that, "although the beginning of the disease process was suggested by virtue of an abnormality on X-ray in January, 2008, the subject disease (bronchiectasis) was not actually diagnosed until sometime later."

¶14.    Dr. Stogner testified that, as of January 21, 2008, Mr. Byrd's chest x-ray indicated "the beginning" of bronchiectasis. But Dr. Stogner explained his testimony with greater specificity when asked about Mr. Byrd's January 21, 2008, chest x-ray: "This is a chest X-ray description—by a radiologist, and basically the impression is that 'the findings [are]

7

suggestive of scarring or atelectasis within the more superior right middle lobe. There *may even be* a small element of traction bronchiectasis in this region as well.'" (Emphasis added.) Dr. Stogner further described the 2008 chest X-ray: "there's a small area on his X-ray that has an abnormality . . . ." When asked about the medical record from UTHC dated June 2010, Dr. Stogner testified that Mr. Byrd had been diagnosed with bronchiectasis in 2010. He continued that the January 2008 record was not a diagnosis, but that it "did indicate an early abnormality in [Mr. Byrd's] chest X-ray." According to Dr. Stogner, "that's the clinical course that you see before bronchiectasis is definitively diagnosed." He stated that, based on the chest x-ray alone, he could not say definitively that Mr. Byrd suffered from bronchiectasis, but that, in retrospect, "knowing what's happened in 2010 and 2012, that is the early beginnings more than likely of what he has now."

¶15. In *Lofton*, we rejected the defendant's argument that the plaintiff was in possession of the requisite knowledge of injury at the time the chest x-ray and CT scan suggested the onset of a particular disease. *Lofton*, 94 So. 3d at 1059. As in *Lofton*, a chest x-ray from January 21, 2008, indicated a pulmonary abnormality potentially consistent with the onset of bronciectasis. The radiology report of January 21, 2008, according to Dr. Stogner, indicated only "[f]indings suggestive of scarring or atelectasis within the more superior right middle lobe. There *may even be* a small element of traction bronchiectasis in this region as well." (Emphasis added.) While a prior x-ray may have been suggestive of bronchiectasis as of January 21, 2008, the testimony of Dr. Stogner was to the effect that it was not until 2010 that a diagnosis of bronchiectasis was made. Ultimately, the determination of the time at

8

which Mr. Byrd knew or by reasonable diligence should have known of his illness, based upon the record before us, is a fact question which must be resolved by a jury.[4] *Lofton*, 94 So. 3d at 1059 (quoting *Weathers*, 14 So. 3d at 692).

## CONCLUSION

¶16.    We affirm the Madison County Circuit Court's grant of summary judgment respecting the Byrds' property damage claims. Because a genuine issue of material fact exists regarding whether the Byrds were within the three-year statute of limitations when they filed their complaint on April 21, 2011, we affirm the judgment of the Circuit Court of Madison County in its denial of summary judgment with regard to the personal injury claims and remand the case for further proceedings.

¶17.    **AFFIRMED AND REMANDED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KING, COLEMAN, MAXWELL AND BEAM, JJ., CONCUR.**

---

[4] We note Ridgway's alternative argument that the trial court erred in its partial denial of summary judgment on discovery rule grounds because the Byrds had failed to assert it. We do not address the substance of Ridgway's argument, because the record reflects that Ridgway raised it in a motion for reconsideration of the partial denial of summary judgment, but never obtained a ruling from the trial court. Instead, Ridgway sought and this Court granted interlocutory appeal. "Our rule is that a party making a motion must 'follow up that action by bringing it to the attention of the judge and by requesting a hearing upon it.' It 'is the responsibility of the movant to obtain a ruling from the court on motions filed by him, and failure to do so constitutes a waiver of the same.'"*Anderson v. McRae's, Inc.*, 931 So. 2d 674, 678 (Miss. 2006) (quoting *Billiot v. State*, 454 So. 2d 445, 456 (Miss. 1984)). We do not hold trial judges in error on issues not presented to them for consideration: "'unless substantial rights are affected, issues not presented to the trial judge are procedurally barred from being raised for the first time on appeal.'" *InTown Lessee Assocs., LLC v. Howard*, 67 So. 3d 711, 718 (quoting *Ill. Cent. R.R. v. Byrd*, 44 So. 3d 943, 948 (Miss. 2010)).