COLEMAN, JUSTICE, DISSENTING:
¶25. The question of whether summary judgment should have been granted in the case sub judice is a close one, and when doubt exists about whether summary judgment should be granted, it should be denied to preserve the plaintiff's right to have a jury consider his claims. As more fully developed below, the evidence of record in the case sub judice does not rise to the level of clarity seen in American Optical Corporation v. Rankin , 227 So.3d 1062 (Miss. 2017), the recent case upon which the majority relies in reversing the trial court's denial of summary judgment. Because the defendants have failed to convince me that no issue of material fact exists regarding the question of whether the statute of limitations has run against the plaintiff's claims, I must, with respect, dissent.
¶26. As an initial matter, Stringfellow requested a jury trial, but the granting of summary judgment in favor of a civil defendant necessarily ends a plaintiff's effort to place his claims before a jury-something our Constitution of 1890 gives him the right to do. Miss. Const. art. 3, § 31. While the right to a jury trial is not lost when no issues of fact exist for a jury to consider, Brown v. Credit Center, Inc. , 444 So.2d 358, 362 (Miss.1983), the potential loss of the right leads courts to deny summary judgment when the question is close. Ladnier v. Hester , 98 So.3d 1025, 1028 (¶ 9) (Miss. 2012) ("If there is any doubt regarding the existence of a genuine issue of material fact, the benefit goes to the nonmovant.")
¶27. In short, the defendants in Rankin provided clearer evidence showing that the plaintiff had knowledge of his alleged injury well before three years prior to filing his complaint. The Rankin Court relied heavily on an entry in Rankin's medical records that showed that Rankin and his wife "relayed his medical history" to caregivers far earlier than three years before he filed his complaint. Rankin , 227 So.3d at 1069 (¶ 27). In concluding its explanation for rendering judgment in favor of the defendants, the Rankin Court explained that Rankin's complaint alleged that Rankin's injury had been "lung disease and silica related conditions, caused by exposure to respirable crystalline silica." Id. at 1074 (¶ 48). The special verdict form presented *179 to the jury asked, "Do you find by a preponderance of the evidence that [Rankin] knew or should have known before May 13, 2010, that he had the lung injury alleged in this lawsuit?" Id. Because the undisputed evidence showed that Rankin knew in 2007 of his lung disease when he sought treatment for and described it to caregivers, the Rankin Court concluded that the trial court erred in refusing to grant the defendants' motion for directed verdict. Id.
¶28. In the case sub judice , Stringfellow's complaint alleges injuries consisting of complicated silicosis and silica-related conditions. "The motion for a summary judgment challenges the very existence of legal sufficiency of the claim or defense to which it is addressed...." Brent Towing Co., Inc. v. Scott Petroleum Corp. , 735 So.2d 355, 358 (¶ 12) (Miss. 1999). Stringfellow's medical records, which show that in 2007 and 2008 he sought treatment for a cough, that in 2008 doctors diagnosed him with bronchitis, painful respiration, other lung disease, diabetes, liver disorder, cough, and shortness of breath, considered in the light most favorable to Stringfellow, are not enough to show that he knew at the relevant times of the injury he alleges in his complaint-complicated silicosis and silica-related conditions.
¶29. Ridgway Lane & Associates, Inc. v. Watson , 189 So.3d 626 (Miss. 2016), hits closer to the factual mark set by the instant appeal. In Watson , the plaintiff filed suit against the firm responsible for managing his residence. Id. at 627 (¶ 1). The home had a history of leaking, and Marcus Byrd-the original plaintiff who died during the pendency of the litigation-claimed that mold buildup caused by the leaks caused him to contract bronchiectasis. Id. at 628 (¶ 4). Byrd's treating physician testified that he diagnosed Byrd with "the beginning" of bronchiectasis on January 21, 2008. Id. at 628 (¶ 5). Byrd and his wife filed suit on April 21, 2011, or three years and three months after the evidenced diagnosis of "the beginning" of the alleged disease. Id. at 628 (¶ 6). The defendants moved for summary judgment, which was denied as to Byrd's personal injury claim, and the Court granted the defendants' petition for interlocutory appeal. Id. at 627 (¶ 1). The unanimous Watson Court affirmed the trial court's denial of summary judgment, holding the January 2008 diagnosis of "the beginnings" of the plaintiff's alleged disease, along with the accompanying radiology report indicating "[t]here may even be a small element of traction bronchiectasis in this region as well," insufficient to take the issue from the jury. Id. at 630 (¶ 15).
¶30. Because the evidence in the case sub judice does not rise to the Rankin level of certainty in showing that Stringfellow knew of his alleged injury, the question becomes one of what Stringfellow reasonably should have known. As in Watson , when the Court held that evidence of "the beginnings" of an alleged disease did not support the grant of summary judgment on statute of limitations grounds, the evidence in the instant case, taken in a light most favorable to Stringfellow, falls short of a conclusive demonstration that Stringfellow knew of the complicated silicosis and silica-related conditions alleged. Accordingly, it becomes a question for the jury to decide.
KITCHENS, P.J., JOINS THIS OPINION IN PART.