# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-01760-COA

J.P. MILAM                                                                                      APPELLANT

v.

ANN KELLY AND JIM KELLY                                                         APPELLEES

| | |
|---|---|
| DATE OF JUDGMENT: | 11/03/2017 |
| TRIAL JUDGE: | HON. WILLIAM H. SINGLETARY |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | MICHAEL VERDIER CORY JR. |
| ATTORNEYS FOR APPELLEES: | DOUGLAS E. LEVANWAY |
| | MARK C. CARROLL |
| | ERIC JOSEPH DILLON |
| | CORY LOUIS RADICIONI |
| | SCOTT CHARLES CAMPBELL |
| | CHARLES EDWARD COWAN |
| NATURE OF THE CASE: | CIVIL - PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 07/30/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLTON, P.J., FOR THE COURT:**

¶1.     J.P. Milam filed a complaint against the City of Jackson, alleging that the City caused storm-drainage water to flood his home.  Milam later amended his complaint to add his adjoining neighbors Jim and Ann Kelly as defendants.  The Kellys moved for summary judgment, arguing that Milam's claim was barred by the statute of limitations and that Milam could not meet his burden of proof on his claims against the Kellys.  The Hinds County Chancery Court entered an order granting summary judgment after finding that Milam's

claim against the Kellys was barred by the statute of limitations and that Milam failed to provide evidence in support of his claims.[1]

¶2.    Milam now appeals the chancellor's order granting summary judgment and asserts the following assignments of error: (1) the chancellor improperly applied the discovery rule; (2) Milam's claims of injunction, negligence, nuisance, and trespass were continuing torts that tolled the statute of limitations; (3) new claims for injunction, negligence, nuisance, and trespass accrued each time Milam's house flooded; (4) fraudulent concealment and equitable estoppel tolled the statute of limitations; and (5) the chancellor erred in finding that Milam failed to set forth facts in support of his claims.

¶3.    Finding no error, we affirm the chancellor's order granting summary judgment.

**FACTS**

¶4.    In 2008, Milam purchased a home located on Sheffield Drive[2] in Jackson, Mississippi. The Kellys owned the adjoining property. Beginning in 2009, Milam suffered recurring problems with flash flooding, which caused water to enter his home. During the first

---

[1] Trenton Milam, Milam's former wife, was an original plaintiff in this matter. Following her divorce from J.P., Trenton moved to be substituted/dismissed. Pursuant to the terms of their property settlement agreement following the divorce, Trenton assigned all claims in this matter to J.P. The record contains no order granting Trenton's request that she be dismissed and discharged as a plaintiff in this case. However, Trenton filed no notice of appeal, and she is not a party to this appeal. For ease of reference, we will refer to the appellant in the singular throughout the opinion, because J.P. is the only true party in interest and appellant in this matter. We refer to J.P. as "Milam" throughout the rest of this opinion.

[2] The record shows that Milam no longer owns the property at issue on Sheffield Drive.

2

flooding incident, Milam was out of town when the water entered his home. When a second flooding incident occurred on July 3, 2010, Milam took steps to investigate the matter. At that time, Milam investigated the City of Jackson's drains and drainage pipe between his property and the Kellys' property.

¶5. In 2011, Milam's house flooded twice. Milam met with the Kellys in January 2011 to discuss the flooding. According to Milam, Jim Kelly blamed the City of Jackson's clogged storm-water drains for the flooding.

¶6. In 2012, Milam's home flooded three times. In July 2012, Milam's counsel wrote a letter to the Kellys asking them to voluntarily provide information concerning the nature of the work they had done in their back yard. Jim Kelly responded by sending a letter dated August 3, 2012. In his letter, Jim Kelly stated that sometime in 2004, he connected a same-sized drainage pipe to the one extending from Milam's back yard. He confirmed that this work was done years before the Milams moved in, and he stated that the previous owners had never mentioned any flooding issues.

¶7. In the late summer or early fall of 2012, Milam spoke with his former neighbor George Thompson about the flooding. Thompson informed Milam that he lived in the house directly behind the Kellys' house for thirty years. According to Thompson, in 2008 or 2009, the Kellys replaced a chain link fence in their back yard with a wooden privacy fence. In August 2012, Milam hired George Guest, an engineer, to investigate the potential cause of flooding.

3

¶8.     On October 26, 2012, Milam filed a complaint in chancery court against the City of Jackson[3] for negligence, trespass, and nuisance. Milam sought injunctive relief, asserting that the City of Jackson allegedly diverted storm-drainage water across his property and caused flooding to his home. The City of Jackson filed its answer and asserted that the flooding was caused by the acts or omissions of others. Milam claims that the City of Jackson suggested that the Kellys had installed a drainage pipe in 2004 that was too small. Milam later discovered that the Kellys' drainage pipe had exactly the same diameter as Milam's drainage pipe.

¶9.     In November 2013, Milam again met with Guest and provided him with the additional information he learned about the Kellys replacing their chain link fence with a wooden fence. That same month, an engineer associated with Guest advised Milam by letter that "[w]hile this wood . . . fence may not be solely responsible for your drainage problem, it does appear to pose a significant problem for any surface storm drainage being conveyed in that drainage way."

¶10.     On April 29, 2014, Milam amended his complaint to add the Kellys as defendants, asserting that they interrupted and altered downstream storm-water flow by replacing a chain link fence with a wooden fence, by changing the landscaping in their back yard, and by filling in an open drainage ditch.

---

[3] The record reflects that prior to the filing of this appeal, the City of Jackson was voluntarily dismissed with prejudice as a party.

¶11. On March 8, 2017, the Kellys filed a motion for summary judgment. In their motion, the Kellys argued that Milam's claim was barred by the statute of limitations and that Milam could not meet his burden of proof on his claims against the Kellys.

¶12. On November 3, 2017, the chancellor entered an order granting the Kellys' motion for summary judgment. The chancellor found that Milam's cause of action accrued, at the latest, on July 3, 2010—the date of the second flooding incident—and pursuant to Mississippi Code Annotated section 15-1-49, Milam had three years from that date to file suit against the Kellys. The chancellor held that because Milam filed his suit against the Kellys approximately three years and ten months after the date the cause of action accrued, Milam's action was barred by the statute of limitations. The chancellor also found that Milam failed to submit any evidence in support of his claim that the Kellys engaged in fraudulent concealment and therefore his claim that the statute of limitations was tolled failed. The chancellor later entered an order on December 13, 2017, certifying its November 3, 2017 order as a final judgment and dismissing Milam's claims against the Kellys with prejudice.

¶13. Milam now appeals.

## STANDARD OF REVIEW

¶14. We review a trial court's grant of summary judgment de novo. *Dodd v. Hines*, 229 So. 3d 89, 95 (¶24) (Miss. 2017). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law." M.R.C.P. 56(c). "The evidence must be viewed in the light most favorable to the party against whom the motion has been made, and the moving party bears the burden of demonstrating that no genuine issue of fact exists." *Dodd*, 229 So. 3d at 95 (¶24) (quoting *Young v. Meacham*, 999 So. 2d 368, 371 (¶13) (Miss. 2008)). "If there is doubt as to whether or not a fact issue exists, it should be resolved in favor of the non-moving party." *Id*.

¶15. We review issues of law, including those concerning statutes of limitation, de novo. *Ridgway Lane & Assocs. Inc. v. Watson*, 189 So. 3d 626, 628 (¶8) (Miss. 2016).

**DISCUSSION**

**I.      Statute of Limitations: Discovery Rule**

¶16. Milam argues that the chancellor erred in finding that his claim against the Kellys was barred by the statute of limitations. Milam claims that the statute of limitations for Mississippi Code Annotated section 15-1-49 was tolled by the discovery rule. Miss. Code Ann. § 15-1-49(2). Milam asserts that the Mississippi Supreme Court has routinely applied the discovery rule to situations where it would be impractical to require a layperson to "ascertain" the negligence at the time it occurred. He cites two cases for support: *Bennett v. Hill-Boren, P.C.*, 52 So. 3d 364, 369 (¶13) ( (Miss. 2011), and *Neglen v. Breazeale*, 945 So. 2d 988, 990 (¶3) (Miss. 2006).

¶17. In his order granting summary judgment, the chancellor held as follows:

[Section] 15-1-49 (1) provides a general three (3) year statute of limitations for claims of negligence such as those brought on behalf of [Milam]. Mississippi

6

case law is clear that the general three (3) year statute of limitations begins to run "upon discovery of the injury, not discovery of the injury and its cause." *Angle v. Koppers*[] *Inc.*, 42 So. 3d 1, 5 (Miss. 2010). [Milam's] home first flooded in 2009; conceivably, the cause of action could have accrued at that time. On July 3, 2010, [Milam] experienced recurring flooding of [his] home. At the latest, the statute of limitations began to run on the date of the discovered recurring flooding. Although [Milam] submit[s] that the statute of limitations did not begin to run until [he was] aware of some negligence on the part of [the Kellys], the same is not supported by statutory or case law. "No provision of [s]ection 15-1-49 provides that a plaintiff must have knowledge of the cause of the injury before the cause of action accrues, initiating the running of the statute of limitations." *Angle* . . . , 42 So. 3d [at] 7[.] Therefore, the cause of action accrued, at latest, on July 3, 2010, and [Milam] had three (3) years from that date to file suit against [the Kellys]. The current action was filed against [the Kellys] some four (4) years and ten (10) months after the initial flooding and some three (3) years and ten (10) months after July 3, 2010. Accordingly, the action is barred by the applicable statute of limitations. [Milam has] failed to submit any evidence that [the Kellys] engaged in fraudulent concealment. Therefore, the claim of tolling fails as well.

¶18. Both Milam and the Kellys agree that the three-year statute of limitation set forth in section 15-1-49 applies to Milam's claims. Miss. Code Ann. § 15-1-49 ("All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after."). Section 15-1-49(2) provides a tolling provision for the statute of limitations, known as the discovery rule: "In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury." The Mississippi Supreme Court further clarified this rule, stating that "causes of action accrue upon discovery of the injury, not discovery of the injury and its cause." *Ridgway Lane & Assocs. Inc.*, 189 So. 3d at 629 (¶9)

7

(internal quotation mark and emphasis omitted).

¶19. In discussing the language of the discovery rule set forth in section 15-1-49(2), this Court recognized a latent injury "as one where the plaintiff is 'precluded from discovering harm or injury because of the secretive or inherently undiscoverable nature of the wrongdoing in question or when it is unrealistic to expect a layman to perceive the injury at the time of the wrongful act.'" *Jackson v. Carter*, 23 So. 3d 502, 505 (¶8) (Miss. Ct. App. 2009) (quoting *PPG Architectural Finishes Inc. v. Lowery*, 909 So. 2d 47, 50 (¶12) (Miss. 2005)). "[I]f a latent injury is not present, the discovery rule would not apply." *Jackson*, 23 So. 3d at 505 (¶8).

¶20. "[T]he specific facts of the case will determine whether the plaintiff knew or reasonabl[y] should have known that an injury existed." *Id*. In determining whether a plaintiff knew or reasonably should have known that he had an injury, the Court considers the actions taken by the plaintiff. *Am. Optical Corp. v. Estate of Rankin*, 227 So. 3d 1062, 1068 (¶23) (Miss. 2017). When a genuine dispute exists as to when the plaintiff discovered an injury, this becomes an issue of fact that must be decided by a jury. *Id*.; *see also Am. Optical Corp*., 227 So. 3d at 1068-69 (¶24) ("Although occasionally, the question of whether the suit is barred by the statute of limitations is a question of fact for the jury, the question may be taken away from the jury if reasonable minds could not differ as to the conclusion . . . .").

¶21. Milam argues that even after his home flooded for a second time on July 3, 2010, all

he knew was that he had a flash flooding problem. Milam maintains that he did not know if anyone was to blame for the flooding, what caused it, or if it was an act of God. At his deposition, Milam testified that the previous owners of the home told him they had never had any flash flooding issues while they lived there.[4] Milam also asserts that flooding issues are exceedingly complex and that there was no simple way for him to figure out why a house suddenly had a flash flooding problem after more than thirty years without one. Milam argues that he discovered no information before 2012 that would have reasonably given him a good faith basis for filing a lawsuit against the Kellys.

¶22. The supreme court has held that "the discovery exception may be applied when it is unrealistic to expect a layman to perceive the injury at the time of the wrongful act." *Punzo v. Jackson County*, 861 So. 2d 340, 346 (¶21) (Miss. 2003). Specifically, the supreme court has established that "[w]ater flow and flood currents are subjects requiring expert knowledge to fully comprehend." *Id*. In *Punzo*, the supreme court discussed the application of the discovery rule to toll the one-year statute of limitations set forth in the Mississippi Tort Claims Act. *Id*. at 348 (¶30). In that case, Punzo, the plaintiff, suffered recurring flood damage to his home over a three-year period. *Id*. at 343 (¶5). When Punzo discovered that Jackson County had negligently altered a nearby bridge and that the negligent alteration of the bridge was the cause of the flooding, he filed a complaint against the County. *Id*. at 346

---

[4] Milam acknowledges that the home at issue flooded in 1979 and 1983, but he maintains that these two prior events were not the result of flash floods.

(¶21). The circuit court found that the statute of limitations had run on Punzo's claim and granted the County's motion for summary judgment. *Id*. On appeal, the supreme court stated that "the discovery exception may be applied when it is unrealistic to expect a layman to perceive the injury at the time of the wrongful act." *Id*. The supreme court accordingly held that the discovery rule should apply to Punzo's cause of action because "water flow and flood currents are subjects requiring expert knowledge to fully comprehend." *Id*.[5]

¶23.     In *Jackson v. Carter*, 23 So. 3d 502, 506 (¶13) (Miss. Ct. App. 2009), this Court discussed the supreme court's holding in *Punzo*. This Court recognized that "the latency of Punzo's injury . . . require[d] unique expertise to perceive the injury and identify the source of the damage" and further summarized as follows:

> Punzo's injury stemmed from the negligent alteration of a nearby bridge by Jackson County. Because the negligent alteration was secretive and inherently undiscoverable, it was unrealistic for a layperson, such as Punzo, to identify the source of his injury without unique knowledge or expertise. It was only after a former Jackson County supervisor advised him of the modification to the bridge that he was able to identify the problem and realize that the County was responsible for the flooding. Accordingly, Punzo's injury was latent . . . and the discovery rule was properly applied.

*Id*. (citing *Punzo*, 861 So. 2d at 344 (¶14)).

---

[5] Compare *Sims v. Bear Creek Water Association*, 923 So. 2d 230 (Miss. Ct. App. 2005). In *Sims*, after the plaintiffs suffered damage to their foundation, they hired a civil engineer who confirmed that a problem with the water system was partially responsible for the injury. *Id*. at 231 (¶2). The plaintiffs filed a complaint against the water association more than three years after meeting with the engineer. *Id*. at (¶3). This Court refused to apply the discovery rule because the plaintiffs had actual knowledge of their injury and facts that would have allowed them to bring their claim prior to the expiration of the applicable statute of limitations. *Id*. at 234 (¶14).

¶24.    In *Angle v. Koppers Inc.,* 42 So. 3d 1, 5 (¶9) (Miss. 2010), the case relied upon the chancellor in his order granting summary judgment, the supreme court again discussed the discovery rule.  In *Angle*, the plaintiff brought claims against various companies, alleging that she suffered injuries due to exposure to harmful levels of toxic chemicals released into the environment from railroad cars, trucks, and a wood-treatment facility. *Id*. at 2 (¶2).  The trial court granted summary judgment in favor of the defendants after finding that the plaintiff's claims were time-barred pursuant to section 15-1-49.  *Angle,* 42 So. 3d at 4 (¶5). The plaintiff appealed, arguing that the trial court erred in finding that the statute of limitations on her claims began to run when the plaintiff discovered, or was diagnosed with, her various illness.  *Id*. at 4 (¶7).  The plaintiff asserted that the statute of limitations did not begin to run until she discovered that her medical problems were the result of exposure to toxic chemicals.  *Id*.  On appeal, the supreme court clarified that "the proper inquiry under [section 15-1-49] [is] the plaintiff's discovery of the injury or disease, . . . , not the discovery of a causative relationship" between the action and the injury.  *Id*. at 6 (¶12).  The supreme court found that "[the plaintiff's] cause of action accrued at . . . the date she was last diagnosed with an injury or disease," explaining: "[n]o provision of [s]ection 15-1-49 provides that a plaintiff must have knowledge of the cause of the injury before the cause of action accrues, initiating the running of the statute of limitations."  *Id*. at 6 (¶18).  The supreme court accordingly affirmed that the plaintiff's claims were indeed time-barred.  *Id*.

¶25.    In the more recent case of *City of Tupelo v. O'Callaghan*, 208 So. 3d 556, 569 (¶36)

11

(Miss. 2017), the supreme court reiterated its prior holding in *Angle* and found that the plaintiffs' claims were barred by statute of limitations.  In that case, the O'Callaghans, the plaintiffs, filed suit against the City of Tupelo after a ditch near their property began to erode, causing significant property damage and mold-related health issues.  *Id*. at 558 (¶1).  The City of Tupelo filed an interlocutory appeal after the trial court found that a genuine issue of material fact existed as to when the O'Callaghans knew or should have known about their potential claim against the City.  *Id*. at 561 (¶13).

¶26.   On appeal, the O'Callaghans maintained that notice of their claim against the City of Tupelo did not accrue until an engineer informed the O'Callaghans that their injury resulted from ditch erosion.  *Id*. at 569 (¶36).  In its analysis, the supreme court stated that "[a]lthough the discovery rule under 15-1-49(2) tolls the statute of limitations for (1) latent injuries or (2) nonlatent injuries where the negligence that caused the injury is not known, an individual may not take shelter in the discovery rule when reasonable minds could not differ that the plaintiff possessed sufficient information to bring a claim."  *Id*. at 569-70 (¶39) (quoting *Raddin v. Manchester Educ. Found. Inc*., 175 So. 3d 1243, 1249 (¶14) (Miss. 2015)).  The supreme court, citing *Angle*, 42 So. 3d at 5 (¶9), explained that "the plain language of [s]ection 15-1-49 'supports the argument that the cause of action accrued upon discovery of the injury, not discovery of the injury and its cause.'"  *Id*.  The supreme court determined that the O'Callaghans' "right to sue vested, at the earliest, . . . when [they] sought assistance from Tupelo officials to review and remedy the damage to [their] home.  It was at this point that

12

[they] affirmatively recognized [that their] walls were pulling apart and [their] home was taking on water, regardless of the cause of those injuries." *Id*. at (¶38). The supreme court also determined that "[a]t the latest, the action ripened in 2008 when [the O'Callaghans] filed [their] first formal claim against Tupelo, acknowledging the injury and . . . right to sue." *Id*. The supreme court held that "reasonable minds hardly can dispute that [the plaintiffs were] on notice of the injury as early as 2008, and because 'no provision of [s]ection 15-1-49 provides that a plaintiff must have knowledge of the cause of the injury before the cause of action accrues,' awareness of the injury itself is enough to activate the notice period.'" *Id*. at (¶37) (quoting *Angle*, 42 So. 3d at 7 (¶18)). Notably, the supreme court held that "the [plaintiffs'] lack of expert testimony and their apparent confusion surrounding the cause of the damage to their home is of no consequence to this Court's ruling." *Id*. at 570 (¶40).

¶27. In applying the supreme court's guidance in *Angle* and *City of Tupelo* to the facts before us, we must affirm the chancellor's determination that the latest date on which Milam discovered the injury was July 3, 2010. Milam amended his suit to add the Kellys as defendants on April 29, 2014, well over three years later. Therefore, Milam's claim against the Kellys is barred by the statute of limitations.

¶28. Since we find that Milam's claim against the Kellys is barred by the statute of limitations, we will not discuss Milam's issue on appeal asserting that genuine issues of material fact existed that precluded summary judgment.

## II. Statute of Limitations: Continuing Torts/New Torts

13

¶29. Milam next claims that the chancellor erred by not finding that the obstruction of the drainage path and resulting flash flooding problem was a continuing tort or, alternatively, that each flood event constituted a new tort altogether. Milam maintains that the "tortious acts in this case never ceased" because the Kellys continued to unlawfully obstruct the drainage path.

¶30. As to his claim for an injunction, Milam asserts that the Kellys have not removed the obstruction responsible for causing the flash flooding. In his negligence claim, Milam argues that the Kellys remain in breach of their duty not to divert water from his lands and to use reasonable care to prevent unnecessary injury to adjoining landowners. Milam asserts that the claim for private nuisance is based on the Kellys' invasion of the Milams' interest in the use and enjoyment of their property, which Milam maintains continues today. With regard to the trespass claim, Milam submits that each time the alterations to the drainage path push water back into his yard and home constituted a separate and distinct interference in his exclusive possession of the property.

¶31. The Kellys assert that Milam failed to adequately raise the issue of continuing torts in the chancery court. Our review of the record reveals that in his second amended complaint, Milam asserted "continuing claims for negligence, trespass and nuisance against the Kellys." Milam requested "an award of actual and compensatory damages plus pre-judgment and post-judgment interest at the legal rate." Milam claimed that "[t]he Kellys also owed the Milams a duty not to negligently alter the existing storm water drainage and

once notified to take corrective action." Additionally, in his response to the Kellys' motion for summary judgment, Milam asserted the following:

> The negligence of the [Kellys] is ongoing. Under Mississippi law, "[w]hen any land owner diverts waters from his lands, he must use reasonable care to prevent unnecessary injury to adjoining landowners. *Sullivan v. Kolb*, 742 So. 2d 771, 779 (Miss. Ct. App. 1999). "If lower riparian landowner obstructs the flow of a stream or water course, thereby causing his upper riparian neighbor's lands to flood, the latter may secure judicial relief." *Georgia Pac. Corp. v. Armstrong*, 451 So. 2d 201, 205 (Miss. 1984). Moreover, "[r]edress may take the form of an award of damages, temporary or permanent, or both, and an injunction, mandatory or prohibitory, or both, as may be appropriate." *Id*. In the instant case, the Kelly[s'] failure to take steps to remedy the problem they created once they were put on notice of the flash flooding problem, constituted a separate and new act of negligence and/or wrongful conduct.

¶32. However, the Kellys argue that this language, coupled with the fact that Milam failed to cite a single case applying the continuing tort doctrine, was insufficient to raise the issue in the proceedings below. We disagree, and we turn to address Milam's assignment of error as to this issue.

¶33. In *Humphries v. Pearlwood Apartments Partnership*, 70 So. 3d 1133, 1135 (¶8) (Miss. Ct. App. 2011), this Court examined "whether . . . flooding is a continuous tort sufficient to toll the three-year statute of limitations." In that case, the plaintiffs "[f]iled suit against Pearlwood Apartments, alleging that Pearlwood negligently constructed and maintained its property, which disrupted the natural flow of rain water and caused [the plaintiffs'] property to flood." *Id*. at (¶11). In its discussion, this Court recognized that

> [a] 'continuing tort' is one inflicted over a period of time; it involves a wrongful conduct that is repeated until desisted, and each day creates a separate cause of action. A continuing tort sufficient to toll a statute of

15

limitations is occasioned by continual unlawful acts, not by continual ill effects from an original violation."

*Id.* (quoting *Pierce v. Cook*, 992 So. 2d 612, 619 (¶25) (Miss. 2008)). This Court explained that "the continuing-tort doctrine will not be applicable where the harm results from one wrongful act or omission." *Id.* In *Humphries*, this Court ultimately found that "the construction of the apartment complex was one event, not a repeated action," and therefore held that the continuing torts doctrine was not applicable. *Id.* This Court reiterated that "[w]here the tortious act has been completed[,] the period of limitations will not be extended on the ground of a continuing wrong." *Id.* at (¶12) (quoting *Peavey Elecs. Corp. v. Baan U.S.A. Inc.*, 10 So. 3d 945, 955 (¶23) (Miss. Ct. App. 2009)).

¶34. Milam argues that the facts in *Humphries* are distinguishable from the present case and that the holding in *Humphries* should be narrowly construed. Milam explains that *Humphries* did not involve the diversion or obstruction of an existing drainage ditch and pathway or raising the elevation of one's property; rather, it involved the cutting of trees.

¶35. However, we find the precedent set forth in *Humphries* to be applicable to the case before us. The *Humphries* court cited the supreme court's opinion in *Pierce*, 992 So. 2d at 619 (¶25), for the proposition that "[a] continuing tort sufficient to toll a statute of limitations is occasioned by continual unlawful acts, not by continual ill effects from an original violation." *See also City of Tupelo*, 208 So. 3d at 574 (¶53) (holding "that a continuous and/or separate taking does not occur with each heavy rain, but that the taking continues from the date the claimant discovers the injury until remedy or just compensation is received").

16

Milam's claims for injunction, negligence, nuisance, and trespass all stem from the flooding of his home, and Milam alleges that the flooding is caused by the placement of Kellys' wooden fence, which altered the flow of the storm water. We find that like *Humphries*, the flooding of Milam's home constitutes a continual ill effect, not a continual unlawful act. Therefore, the continuing torts doctrine does not apply. We find no merit to Milam's argument that injunction, negligence, nuisance and trespass constituted continuing torts that tolled the running of the statute of limitations under section 15-1-49.

### III. Statute of Limitations: Equitable Estoppel and Fraudulent Concealment

¶36. Milam next submits that the three-year statute of limitations should be tolled based on the doctrine of fraudulent concealment or the doctrine of equitable estoppel. In his order granting summary judgment, the chancellor held that Milam "failed to submit any evidence that [the Kellys] engaged in fraudulent concealment. Therefore, the claim of tolling fails as well." On appeal, Milam argues that "there is no question" that the Kellys withheld information that would have put a reasonable person on notice of the potential claims against the Kellys.

¶37. The Kellys argue that Milam raises the doctrine of equitable estoppel for the first time on appeal. After reviewing the record of the chancery court proceedings, we agree. We have held that "[a] party is not allowed to raise an issue for the first time on appeal." *Luse v. Luse*, 992 So. 2d 659, 663 (¶12) (Miss. Ct. App. 2008). Accordingly, Milam's argument regarding equitable estoppel is procedurally barred.

17

¶38. Turning to examine Milam's argument regarding fraudulent concealment, the record reflects that in his response to the Kellys' motion for summary judgment, Milam asserted the following:

> Alternatively, the running of the statute of limitations was tolled based on the doctrine of fraudulent concealment. Under Mississippi law, fraudulent concealment of a cause of action tolls the running of the statute of limitations. *Myers v. Guardian Life Ins. Co. of America Inc.*, 5 F.Supp.2d 423, 431 (N.D.Miss. 1998). The fraudulent concealment doctrine "applies to any cause of action." *Id*. In order to establish fraudulent concealment, "there must be shown some act or conduct of an affirmative nature designed to prevent and which does prevent discovery of the claim." *Reich v. Jesco, Inc.*, 526 So.2d 550, 552 (Miss.1988). In the instant case the [Kellys] engaged in concealment when they remained silent in 2011. They again failed to disclose the full extent of the dirt work and changes they made to the drainage pathway in their letter to [Milam's] lawyer.

¶39. Mississippi Code Annotated section 15-1-67 (Rev. 2012) provides:

> If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered.

The supreme court has held that "[w]hen a plaintiff uses fraudulent concealment to toll the statute of limitations, he must prove the necessary elements of fraudulent concealment in order to defeat a defendant's motion for summary judgment." *Trustmark Nat'l Bank v. Meador*, 81 So. 3d 1112, 1119 (¶17) (Miss. 2012). In order "[t]o establish a claim of fraudulent concealment, 'there must be shown some act or conduct of an affirmative nature designed to prevent and which does prevent discovery of the claim.'" *Id*. (quoting *Reich v. Jesco Inc.*, 526 So. 2d 550, 552 (Miss. 1988)). Specifically, "[t]he party is required to show

18

that (1) some affirmative act of conduct was done and prevented discovery of the claim; and (2) due diligence was performed on its part to discover the claim." *Id*. (citing *Sanderson Farms Inc.*, 917 So. 2d at 790 (¶33)); *see also Brown v. McKee*, 242 So. 3d 121, 128 (¶24) (Miss. 2018); *Morgan v. Green-Save Inc.*, 2 So. 3d 648, 653 (¶12) (Miss. Ct. App. 2008) ("Where the parties do not stand in a confidential or fiduciary relationship with one another, an affirmative act of concealment is necessary" to establish a claim for fraudulent concealment.).

¶40.     Milam asserts that the Kellys engaged in fraudulent concealment when they "remained silent" and failed to disclose the full extent of the dirt work and changes they made to the drainage pathway in their letter to Milam's lawyer. We recognize that "at the summary judgment stage, [Milam] bore the burden to produce evidence establishing a triable claim for fraudulent concealment." *Brown*, 242 So. 3d at 130 (¶31). The record before us reflects that in response to the Kellys' motion for summary judgment, Milam filed a supplemental affidavit from Ryan Cole. In his affidavit, Cole states that he was present at the January 2011 meeting between Milam and Jim Kelly. According to Cole, the purpose of the meeting was to discuss the possible causes and solutions to Milam's flooding issues. Cole stated that Milam asked Jim Kelly if he knew of any changes in the area that may be causing flooding, and Jim Kelly suggested that the storm-water storage drain maintained by the City of Jackson was probably clogged. Cole further stated that "at no time during this conversation did . . . [Jim] Kelly say anything about any changes or work that had been done in his own back

19

yard."

¶41.  The record also contains the July and August 2012 correspondence between Milam's

counsel and the Kellys.  In a letter dated July 9, 2012, Milam's counsel states:

> It is my understanding that you previously enclosed a drainage ditch in your
> back yard.  The engineer that we have retained has requested that we obtain
> information concerning the nature of the work that you had done.
>
> [Milam] would obviously prefer to obtain this information without having to
> use more formal means.  Therefore, I would appreciate your contacting Mr.
> Milam or me so that we can obtain the information we need within the next 10
> days.

¶42.  On August 3, 2012, the Kellys wrote to Milam's counsel and stated as follows:

> When my family and I moved into our current residence on Sheffield Drive,
> some 16 years ago, we noticed that the neighboring property to my West (the
> current Milam property), had a pipe running West/East across the back of it
> which terminated onto our property. The pipe dumped water onto our property
> during heavy rains. Several years later (over 8 years ago from today) I
> connected a same diameter pipe to that pipe which allowed some of the rain
> water to run across my property through the pipe, as opposed to running along
> the top of the ground.  In a nutshell, I did the same thing one of the former
> neighboring (Milam lot) property owners had done, continuing his pipe across
> my property to the other (East) side of my property.  All of that was done years
> before the Milams moved in. The Ridgeways, who lived in the now Milam
> house immediately prior to the Milams moving in, never mentioned any
> flooding issues to [us].
>
> Beginning about a year ago, [Milam] let us know that he was having water
> problems.  He came to my front door wanting to talk about the water problem
> he is having, which we discussed. Later, he called a neighbor meeting in his
> den to discuss the matter, which I attended.  He has had an architect or
> inspector in our back-yard, which [we] allowed. [Milam] stated that in his
> opinion, the city is causing his flooding.  At one point he said that he believed
> that all of our pipes (his uphill neighbor, his and mine) should be larger in
> diameter. I have recently heard that [Milam] now claims that my pipe was put
> in after he moved in. That is not true. [We] would like to assist however we

20

can. The flooding situation is no doubt very frustrating for all and costly. However, I would rather not meet with [Milam] about this matter again. We have advised [Milam] via email that I am willing to meet with his engineer. If you or your engineer would like to meet with me about this situation, then feel free to call so we can arrange a time.

Milam also claims that in response to interrogatories propounded to the Kellys during discovery, the Kellys withheld information about the landscaping in their back yard.

¶43. This Court has held that "[s]ilence may constitute fraud when a duty exists to disclose the information claimed to have been suppressed." *Poe v. Summers*, 11 So. 3d 129, 134 (¶18) (Miss. Ct. App. 2009); *see also Mabus v. St. James Episcopal Church*, 884 So. 2d 747, 762 (¶32) (Miss. 2004). In the case before us, the Kellys had no underlying fiduciary duty to Milam.

¶44. In *Brown*, 242 So. 3d at 126 (¶12), the plaintiff shareholder, Brown, claimed that the defendant shareholder, McKee, fraudulently concealed Brown's cause of action which tolled the statute of limitations. Specifically, Brown claimed that McKee concealed financial documents relating to an appraisal of a property owned by their company and then fraudulently concealed the true value of Brown's interest when he bought out Brown's shares for far less than the property's appraised value. *Id.* at 125 (¶7). On appeal, the supreme court found that "[t]he true value of the apartment complex at the time of sale was reasonably discoverable." *Id*. at 128 (¶20). The supreme court therefore held that McKee's silence as to the value of Brown's interest in the property did not equate to fraudulent concealment, explaining that "Brown's sale [of his shares] to McKee was by no means concealed from

21

Brown, who was a party to the sale and accepted his agreed-upon proceeds for the interest transfer." *Id*. at 129 (¶26).

¶45. We find that Milam failed to present evidence showing that the Kellys were aware that their wooden fence and landscaping were the cause of the flash flooding. Additionally, we find that Milam presented no evidence of an affirmative act by the Kellys to prevent Milam's discovery of his claim. Our review of the correspondence between Milam and the Kellys reflects that the Kellys were forthcoming in answering the questions posed by Milam's attorney. The Kellys even allowed their back yard to be inspected and agreed to meet with Milam's engineer. Since we find that Milam presented no evidence of an affirmative act by the Kellys to prevent discovery of Milam's claim, we therefore decline to address whether Milam has met his burden of proving the remaining factor necessary to establish a claim for fraudulent concealment (due diligence).

¶46. After our review, we affirm the chancellor's order granting summary judgment in favor of the Kellys.

¶47. **AFFIRMED.**

**BARNES, C.J., TINDELL AND C. WILSON, JJ., CONCUR. J. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. LAWRENCE, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY GREENLEE, WESTBROOKS, McDONALD AND McCARTY, JJ.**

**LAWRENCE, J., DISSENTING:**

¶48. Water, while the source of life, can also be a source of destruction. The flooding of one's home can be costly and devastating. More so, determining the exact cause producing

22

the injury can be confusing, complicated, and often the product of science. Because I believe the supreme court meant what it said in *Punzo*[6] that "water flow and flood currents are subjects requiring expert knowledge to comprehend," I respectfully dissent from the lead opinion.

¶49. The facts of this case are crucial and bear repeating. In 2008, J.P. Milam purchased the home at 1717 Sheffield Drive in Jackson, Mississippi. Between 2008 and 2017, the home suffered flash flood damage a total of eight times. While the record does indicate that Milam suspected a recurring problem after the home flooded a second time in July, 2010, it is also clear that Milam did not know the cause of the flooding.

¶50. Milam hired an engineer, George Guest, in August, 2012 to make a temporary plan to prevent the flooding. The record indicates that Guest asked Milam to find out if there were any changes in his neighbors' properties. In order to fulfill that request, Milam reached out to his neighbors Jim and Ann Kelly. Based on the Kellys' suggestion that the cause may be a clogged drainage ditch near their homes, Milam filed his initial injunction against the City of Jackson on October 26, 2012. The City's response was that the flooding was not the product of a clogged ditch but rather the fault of one of Milam's neighbors. Milam, still confused as to the cause of the flooding and who was at fault, continued to investigate whom he would properly file his claim against.

¶51. In 2004, the Kellys had a retaining wall built and installed a pipe for drainage.

---

[6] *Punzo v. Jackson*, 861 So. 2d 340, 346 (¶22) (Miss. 2003).

Additionally, in 2004, the Kellys raised the southeast corner of their back yard. Four years later in 2008, the Kellys replaced their chain link fence with a wooden privacy fence. Finally, in May of 2009, the Kellys added topsoil, planted more ground cover, and placed several crepe myrtle trees in the southeast corner of the yard. A month after the final alteration in 2009, Milam's flash flooding problem began.

¶52. Milam learned of the full extent of the alterations to the Kellys' property from a former neighbor George Thompson. In his affidavit, Milam claimed Thompson told him there had not been any issue with flooding for the thirty years Thompson had lived on the property. But after the Kellys made these alterations, Thompson began to see water encroaching on his property during storms.

¶53. On November 21, 2013, based on the information from Thompson, Milam met with engineer Guest again and another evaluation was done. In a letter dated November 26, 2013, David Dichiara, a consultant for Guest, described the following scenario:

> [I]t appears that the new wood panel privacy type fence that your neighbor constructed is perpendicular to the drainage way earlier mentioned. That is the surface storm water that flows through this drainage way is trying to pass through the wood panel fence and, generally speaking, a chain link fence will allow water to pass through it much easier than a wood panel fence. While this wood panel fence may not be solely responsible for your drainage problems, it does appear to pose a significant problem for any surface storm drainage being conveyed in that drainage way.

On April 29, 2014, Milam filed his first amended complaint to include the Kellys as defendants after finding out their fencing could be contributing to his damage.

¶54. The Mississippi Supreme Court has made it clear that expert disclosure concerning

24

cases of flooding can extend the statute of limitations by virtue of the discovery rule. *Punzo*, 861 So. 2d at 346 (¶22). I believe the logic of *Punzo* is outcome determinative and is the controlling precedent in this case. Punzo's home flooded at least six times from May, 1995, until 2002. *Id*. at 342 (¶5). In 1991, Jackson County had made changes to the north entrance of the Daisy Vestry Road bridge, which was located right by Punzo's home. *Id*. at 342 (¶3). Punzo was unaware of the alterations to the bridge until 1998. *Id*. at 343 (¶8). The supreme court found that water flow and flood currents require "expert knowledge" to decipher the cause of the injury, and found that the trial court's determination that Punzo's injury was "immediate rather than latent" was misplaced. *Id*. at 346 (¶22).

¶55. Finally, the supreme court in *Punzo* quoted its opinion in *Donald v. Amoco Production Co.*, 735 So. 2d 161, 168 (¶18) (Miss. 1999), that found "the discovery exception may be applied when it is unrealistic to expect a layman to perceive the injury at the time of the wrongful act." *Punzo*, 861 So. 2d at 346 (¶21). To find otherwise would restrict legitimate claims of plaintiffs who know they have been injured due to flooding but do not know the source of or the cause of that flooding.

¶56. The lead opinion affirms the decision of the chancellor to dismiss Milam's complaint for failure to properly amend within the applicable statute of limitations. The chancellor relied on *Angle v. Koppers*, 42 So. 3d 1 (Miss. 2010), and concluded that the statute of limitations began to run on July 3, 2010 when the flooding occurred for the second time, and not when an expert notified the plaintiff. But *Angle* is not the controlling case to determine

25

the statute of limitations concerning the flow of water. Angle brought suit for torts alleged to have occurred from 1984 through 2001. *Angle*, 42 So. 3d at 2 (¶2). The suit complained that Angle had been exposed to creosote and pentachlorophenol, which had been released into the environment through railroad tank cars. *Id*. Angle filed suit in 2006. *Id*. She alleged injuries that ranged from ovarian cysts in 1999, a lumpectomy in 2001, and other health issues. *Id*. at 3 (¶3). The trial court determined the claim was outside of the statute of limitations. *Id*. *Angle* is a personal injury case, not a damage lawsuit dealing with the ebb and flow of water.

¶57. Additionally, the majority relies on the supreme court's opinion in *City of Tupelo v. O'Callaghan*, as an additional example justifying the dismissal of Milam's claim. 208 So. 3d 556 (Miss. 2017). There, the supreme court reiterated its holding in *Angle,* and found that O'Callaghan was barred from his claim because he knew of his injury but failed to timely file a claim against the proper defendant within the statute of limitations. *Id*. at 569 (¶38).

¶58. *O'Callaghan* involved the takings clause outlined in Article 3, Section 17 of the Mississippi Constitution. *Id*. at 560 (¶13). O'Callaghan sued the City of Tupelo when the foundation of a garage apartment he built caved in due to faulty installation of a drainage ditch by the city. O'Callaghan knew the damage to his property was likely caused by the city constructing the drainage ditch. He contacted the city to inspect the problem, and several city officials actually visited the property site. *Id*. at 559 (¶8). But instead of filing suit immediately, O'Callaghan waited years before filing the first of two lawsuits against the City.

26

O'Callaghan filed his initial complaint in 2008, more than "ten years after he **first** recognized the ditch was causing damage to his home." *Id*. at 560 (¶9) (emphasis added). He later voluntarily dismissed that suit. *Id*. In 2012, however, he filed another lawsuit again claiming the same allegations as the 2008 lawsuit that he voluntarily dismissed. Not only were the parties identical, the supreme court noted that the claims of the 2012 suit were "the same claims as the 2008 suit." *Id*. at (¶11). The apparent reasoning behind O'Callaghan's second attempt at suing the City in 2012, was another engineer's opinion outlining the City's negligence. In fact, O'Callaghan had received three engineer reports and knew of the damage the ditch was causing to his home years before his lawsuit. The supreme court found O'Callaghan could not claim the discovery rule in 2012, when he had filed a complaint on the same claims against the same defendant as before in 2008.

¶59. These facts differ from the facts of Milam's claim. Milam did not know of any of the changes to the Kelly's property because it was done before Milam purchased his property. Further, once Milam learned of the Kellys' alterations to their land, he certainly did not know how those alterations could affect or impact the flow of the water on his property. He had to learn about that impact from his expert, just like the supreme court found in *Punzo*. The expert told Milam that the flow of water could be affected by the Kellys' alterations. In response, Milam filed his complaint on April 29, 2014, within the applicable statute of limitations. I would find that the Mississippi Supreme Court's finding in *Punzo* extended the statute of limitations in this case and that the discovery rule applies to claims concerning the

27

ebb and flow of water since those issues are typically outside of a lay person's knowledge. That is essentially what the supreme court held in *Punzo* and what this Court should hold in this similarly situated case. I would reverse the dismissal of this cause and remand this case for a trial on the merits. Accordingly, I respectfully dissent from the holding in the lead opinion.

**GREENLEE, WESTBROOKS, McDONALD AND McCARTY, JJ., JOIN THIS OPINION.**